(No. 13823.—Reversed and remanded.)
CHARLES BOYD ESHELMAN, Defendant in Error, vs. JAMES
RAWALT, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. STATE'S ATTORNEYS—*when State's attorney does not violate statute against aiding civil case.* A State's attorney who assists in the prosecution of a civil suit for criminal conversation does not come within the prohibition of the statute merely because he caused the arrest of the defendant on a charge of adultery in order to bring him into the county where the civil suit was brought but where the prosecution for adultery could not be maintained.

2. EVIDENCE—*testimony of witness who is attorney in the case is entitled to little weight.* It is not approved practice for an attorney connected with a case to appear as a witness, and but little weight is to be given to the testimony of a witness who places himself in the double capacity of acting as attorney and furnishing evidence to insure success in his case. .

3. DAMAGES—*when punitive damages may be allowed.* Punitive, vindictive or exemplary damages are allowed only where the wrongful act is characterized by circumstances of aggravation, such as willfulness, wantonness, malice or oppression; and in the absence of these elements the damages cannot exceed, and must be strictly confined to, compensation for the injury sustained.

4. SAME—*the right to punitive damages must not be abused.* Courts recognizing the doctrine of punitive damages must exercise a high degree of watchfulness to prevent it from being perverted. and extended beyond the real principles upon which it is based, and should not allow plaintiffs, through the instrumentalities of instructions to the jury, to characterize the acts of the defendant with degrees of enormity and turpitude which the law does not affix to them, and thereby recover damages for an injury which is more against society than the individual bringing the suit.

5. SAME—*reason for allowing punitive damages.* Punitive, vindictive or exemplary damages are allowed in the interest of society, in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. .

6. SAME—*measure of damages is for the jury but it is a question of law whether punitive damages are allowable.* The measure of damages is for the jury under the evidence in a common law action for personal injury, but it is a question of law whether the facts of the particular case bring it within the rule in which punitive damages may be assessed.

7. SAME—*exemplary damages are allowable in suit for criminal conversation.* In an action for damages for criminal conversation the jury is justified in adding to the compensatory damages some further sum as vindictive or exemplary damages.

8. SAME—*when judgment will be reversed because of misconduct of plaintiff's counsel.* Under the rules of agency a client is bound by the act of his attorney within the scope of the attorney's authority, and where the repeated misconduct of the counsel for the plaintiff in an action for damages for criminal conversation makes it impossible for the defendant to make a fair presentation of his defense, and results in a verdict for damages greatly enhanced by such misconduct, the plaintiff must suffer the consequences of his attorney's actions and the judgment will be reversed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Fulton county; the Hon. ROBERT J. GRIER, Judge, presiding.

M. P. RICE, and HARVEY H. ATHERTON, for plaintiff in error.

W. S. JEWELL, BURNETT M. CHIPERFIELD, and CLAUDE E. CHIPERFIELD, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Charles Boyd Eshelman, defendant in error, had a verdict and judgment in the circuit court of Fulton county in an action of trespass on the case brought by him against James Rawalt, plaintiff in error, for criminal conversation with his wife, Rosa Eshelman. A writ of attachment was issued in aid of the suit, and plaintiff in error filed a plea of the general issue to the declaration and traversed the affidavit for attachment. The issues were submitted to a jury, which found the defendant guilty and assessed the damages at $13,500, and found the issue on the attachment for the plaintiff. The Appellate Court for the Third District affirmed the judgment, and a writ of *certiorari* was granted to bring the record to this court.

298—13

The plaintiff was a tenant on a farm in Fulton county, and his wife, Rosa, was thirty-four years old. They had three children, whose ages were thirteen, ten and six years, respectively. The defendant was an unmarried man forty-seven years old, owning and operating a farm near plaintiff's home, and at times when he did not have people living in his house he took his meals at other places. In the fall of 1918 he took his meals at the home of the plaintiff during two different periods, the first of which lasted several weeks, when the plaintiff told him that he could not board him, and he said all right and left the house. Later plaintiff told the defendant he could board there if the plaintiff's wife would treat plaintiff as a husband and the defendant as a boarder. He returned and boarded at the plaintiff's home three or four weeks, and was then told by the plaintiff that he could not board him any longer; that he and his wife were getting "too thick," and the defendant said all right and left the house. The defendant was absent from the vicinity for some time in the winter of 1919, but returned in April and lived at his farm until about the first of June. On June 10, 1919, while the defendant in error was absent in Lewistown, his wife left their home and drove to Avon, where she drew $400 from the plaintiff's account at the bank and went to Chicago. On June 17 she registered under the name of Mrs. B. Ross at the Plaza Hotel, a family hotel near Lincoln Park, and was assigned a room for a single person. The room was changed the same day to a room for two persons, and in the forenoon of the next · day the defendant came to the hotel and registered as James Ross, husband of Mrs. B. Ross, and was assigned to the room occupied by her. The defendant and Rosa Eshelman occupied that room until June 21. On that day the plaintiff and the State's attorney of Fulton county found the defendant and Rosa Eshelman on State street, in Chicago, and the State's attorney called a policeman and had them arrested. The State's attorney prosecuted the defendant in

what he called the morals court of Chicago for the offense of adultery and he was convicted. The State's attorney also caused a warrant to be issued in Fulton county for the arrest of the defendant and Rosa Eshelman for adultery and had the sheriff of Fulton county go to Chicago and arrest her. She returned to Fulton county with the sheriff, State's attorney and her husband and shortly afterward returned to her own home, where she had continued to live with her husband and family at the time of the trial.

The judgment having been affirmed by the Appellate Court, the only questions subject to consideration in this court are questions of law.

The State's attorney of Fulton county was one of the attorneys who brought the suit and prosecuted it up to the time of the trial, and when offered as a witness for the plaintiff an objection to his competency was made and overruled. The trial of the case was set for January 22, 1919, and on January 19, very shortly before the trial, the witness withdrew from the case as an attorney of record. He testified that he went to Chicago with the plaintiff as State's attorney; that Judge Fry, of the municipal court, appointed him State's attorney of Cook county to prosecute the defendant for adultery before Judge Hayes and up to the time he testified he had been continuously advising and assisting in the trial of the case; that in the forenoon of that day he advised with the other attorneys for plaintiff in the selection of the jury, and in the afternoon, in the examination of witnesses, he called the attorneys for plaintiff to the corridor and talked to them about the case and the conduct of it. It is apparent that from the time the suit was brought the testimony of the witness would be important to his client, and his statement showed that his withdrawal in order to testify was merely nominal. He procured a warrant as State's attorney in Fulton county for the arrest of the defendant and Rosa Eshelman, but the offense was committed in Cook county and there could not have been any prose-

cution in Fulton county, so that the warrant must have been used to bring Rosa Eshelman home. It therefore appears that the State's attorney did not come within the prohibition of the statute and there was no error in the ruling of the court. It is not unlawful, but it is not a proper practice, for an attorney connected with a case to appear as a witness, and this witness continued to be acting as an attorney in the case. He assumed the double burden of acting as attorney and furnishing evidence to insure success in his professional capacity. But little weight is given to the testimony of a witness who places himself in such a situation. (*Wilkinson* v. *People,* 226 Ill. 135; *Wetzel* v. *Firebaugh,* 251 id. 190; *Grindle* v. *Grindle,* 240 id. 143.) Part of his testimony, which is insisted upon as evidence of aggravation by defendant of his offense, was that when he and the plaintiff met the defendant and Rosa Eshelman the defendant had her by the arm and told her to come on, and they endeavored to escape by running down the street and going into a basement cafeteria and then came out and took a taxicab, and the witness and plaintiff chased them in another taxi.

The verdict was for $13,500, and it is beyond question that it is mainly for punitive or vindictive damages, which the court instructed the jury they might allow if they believed from the evidence that the defendant acted with an evil intent or motive to injure the plaintiff. The defendant owned 180 acres of land worth about $250 an acre, a half interest in 160 acres worth $100 an acre, and $5000 or $6000 worth of personal property, so that he was worth about $50,000. The record does not furnish any means of ascertaining what was allowed as punitive or vindictive damages, and the Appellate Court could not know how much the jury had allowed for damages of that character. (*Chicago, Milwaukee and St. Paul Railroad Co.* v. *Hall,* 90 Ill. 42; *Chicago Union Traction Co.* v. *Lauth,* 216 id. 176.) Punitive, vindictive or exemplary damages are al-

lowed in this State where a wrongful act is characterized by circumstances of aggravation, such as willfulness, wantonness, malice or oppression, but to warrant an allowance of such damages the act complained of must not only be unlawful but must partake of a wanton and malicious nature. While the doctrine allowing such damages has been criticised and in some States has been repudiated, it was said in *Holmes* v. *Holmes,* 64 Ill. 294, that the doctrine is too firmly rooted in our jurisprudence to be disturbed. It was said, however, that the rule allowing such damages has been severely questioned by many able jurists, one of whom is Prof. Greenleaf, and the courts recognizing the doctrine within its proper scope ought to exercise a high degree of watchfulness to prevent it from being perverted and extended beyond the real principles upon which it is based by allowing plaintiffs, through the instrumentalities of instructions to the jury, to characterize the acts of the defendant with degrees of enormity and turpitude which the law does not affix to them. The universally recognized rule where the doctrine is in force is that such damages may be recovered only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or circumstances of aggravation. (*City of Chicago* v. *Martin,* 49 Ill. 241; *Pearson* v. *Zehr,* 138 id. 48.) In the absence of these elements the damages cannot exceed, and must be confined strictly to, compensation for the injury sustained. Where punitive, vindictive or exemplary damages may be assessed they are allowed in the interest of society in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future, and a frequent objection to the doctrine is in allowing an individual to recover and appropriate damages for an offense against the social order and in the interest of society. This consideration enforces the injunction of this court for watchfulness to see that the right is not abused.

The admeasurement of damages is for the jury under the evidence, but it is a question of law whether the facts of the particular case bring it within the rule in which punitive damages may be assessed. In this case the jury, under the rule of law prevailing in this State, would have been justified in adding to the compensatory damages some further sum as vindictive or exemplary damages. The damages allowed, however, are very large, indeed, and far beyond any punishment inflicted by the Criminal Code for the crime of adultery, which is a fine of a limited amount or a jail sentence. It is true that the Criminal Code does not control the question, but there is no distinction between exemplary damages and damages allowed as a punishment, (*Lowry* v. *Coster,* 91 Ill. 182,) and the Criminal Code fixes a punishment designed to be adequate to prevent the offense for the protection of society. It is claimed that there were circumstances of great aggravation, and, as before stated, the fact that the defendant attempted to escape and hurried Rosa Eshelman along is pointed out as such aggravation. It was the natural thing to do, and the defendant would not be expected to welcome the State's attorney and the plaintiff. The defendant also wrote a letter to a woman about Rosa Eshelman's pocket-book, suitcase and other things left in Chicago, and said that he would like to hear how Rosa was getting along and that he had not changed a bit in his feelings. That did not indicate any present intent to renew the offense. There was evidence of a want of harmony between the plaintiff and his wife before she left home, and that she had threatened to leave before and complained of staying there. She went alone to Chicago and secured a room at the hotel, and while it was certainly understood that the defendant would meet her there, there was no evidence that he enticed her away from her home. After she returned to her home her conduct and the relations between her and her husband were practically the same as before.

It is the province of the jury to determine the facts, but it is the province and the duty of the courts to see that every litigant has a fair trial in accordance with the law, and it is complained that the verdict, which was very large, was increased and brought about by the conduct of the attorney for the plaintiff on the trial. The record of the trial from the time the jury were sworn until the argument began contains 330 pages, and it is impracticable to give such a detailed statement as would furnish a complete understanding of the grounds for complaint. There were continual side remarks by plaintiff's attorney, interruptions in the examination of witnesses conducted by the attorneys for the defendant, comments on the evidence, assertions of fact that would be proved, epithets and remarks and an attitude of disrespect toward the court, such as statements that the attorney was going to yield to the opinion of the court but believed that he was right. His conduct was correctly characterized by the Appellate Court as consisting of a running fusilade of interruptions, contradictions, crosstalk and side remarks, indulged in over repeated objections by counsel for the defendant and persisted in over repeated warnings and admonitions of the court and showing disrespect for all rules and ethics in the practice of the law. The Appellate Court said that the trial judge must certainly have been the personification of "patience on a monument" to be able to refrain from enforcing proper decorum, but said that it would be unwarranted to reverse the judgment and thereby penalize plaintiff for the conduct of his counsel, for which it did not appear he was in anywise responsible. We do not concur with the Appellate Court that the judgment for the complainant could not be reversed for the conduct of his counsel or that he was not responsible for it. That would be to reverse every rule of law approved by the judgment of mankind as to the responsibility of a principal for acts of his agent or an employer for acts of his servant. The law holds the principal responsible for

the acts and derelictions of his agent within the authority conferred, and the master for the conduct of his servant and injuries occasioned by him within the scope of his employment. A client is bound, according to the ordinary rules of agency, by the acts of his attorney within the scope of the attorney's authority, and to say that he is not responsible for misconduct of his attorney is to visit the evil consequences upon an unoffending party. Not only is that true, but if such a rule is adopted the services of an attorney able to get unjust verdicts by unfair means or prevent just verdicts by like means would be in very great demand and his professional prospects greatly enhanced to the public injury. The Appellate Court did not find anything in the record to indicate that the defendant was injured by the course pursued by the attorney for the plaintiff, but we do not agree that such is a fact. Not only was it impossible to have a fair trial in the state of disorder, confusion and disturbance unusual in a court of record, but it was impossible for the defendant to make any fair presentation of the situation. The conduct of the attorney was such as would naturally enhance the damages which the jury were advised they could allow in the exercise of their discretion.

The learned judge exhibited rare patience and ability in his rulings and there was no error on his part in the trial or in instructing the jury. He protested constantly against the conduct of the attorney and warned him how the record would appear, but when he said that the record would show matters that he was very much afraid of and would not look very good, the attorney said, "I don't care how it looks." The verdict obtained by the means employed in this case cannot be permitted to stand.

The judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*