# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876

| | |
|---|---|
| Caption in Supreme Court: | JIMMY CRITTENDEN *et al.*, Appellees, v. THE COOK COUNTY COMMISSION ON HUMAN RIGHTS *et al.*, Appellants. |
| Docket Nos. | 114876, 114911 cons. |
| Filed | June 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Punitive damages are not favored in the law, and where a home rule county's human rights ordinance did not provide for them, its human rights commission had no legislative authority to award them, had no common law power to do so, and should not be deferred to in its decision that they were appropriate in a case of willful and wanton sexual harassment. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Sophia Hall, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Christopher M. Dressel, of Chicago, for appellant Lynita M. Boyd. |
|---|---|
| | Anita Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Maureen O. Hannon and Thomas Cargie, Assistant State's Attorneys, of counsel), for appellant Cook County Commission on Human Rights. |
| | No appearance for appellees. |
| | Robert Marc Chemers and Adrian T. Rohrer, of Pretzel & Stouffer, Chrtd., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel. |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1      Lynita Boyd filed a complaint with the Cook County Commission on Human Rights (Commission) alleging that she was sexually harassed by her employer, Jimmy Crittenden, while she was employed as a bartender at Jimmy's Place. The Commission entered an order in Boyd's favor, awarding $41,670 in lost wages, $5,000 in compensatory damages, $5,000 in punitive damages, and attorney fees and costs. Crittenden and Jimmy's Place (hereinafter referred to simply as Crittenden) sought *certiorari* review in the circuit court of Cook County. The circuit court denied the petition, affirming the Commission's order. Crittenden appealed, and the appellate court upheld the Commission's order and grant of compensatory damages, but reversed the award of punitive damages. 2012 IL App (1st) 112437. This court allowed separate petitions for leave to appeal filed by both Boyd and the Commission. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). Crittenden did not file a brief with this court, but the Illinois Association of Defense Trial Counsel (IDC) filed an *amicus* brief in support of Crittenden's position. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3      Boyd filed a complaint with the Commission on November 15, 2006, alleging discrimination in employment based on sexual harassment by Crittenden, a managing employee of Jimmy's Place, and constructive discharge. On June 1, 2007, the Commission entered an order finding substantial evidence of a violation of the Cook County Human Rights Ordinance (Ordinance) (Cook County Code of Ordinances § 42-30 *et seq.* (2002)).

An administrative hearing was held on July 9, 2008, and the hearing officer issued his recommended order in favor of Boyd on February 27, 2009. Crittenden and Boyd each filed exceptions to the recommended order. The Commission then issued its decision and order on February 16, 2010.

¶ 4    The Commission made several findings of fact, which were taken directly from Boyd's testimony. First, the Commission found that Crittenden "repeatedly made inappropriate sexually related comments to [Boyd] during her employment." In response, Boyd "made several repeated attempts to ignore and discourage Mr. Crittenden's behavior by asking him to leave her alone and telling him 'I am not here for that.' " The Commission also found Boyd's testimony regarding the evening of July 26, 2006, to be credible.[1] On that night, Rachel, a female patron of Jimmy's Place, approached Boyd prior to closing time. Rachel "propositioned [Boyd] in a sexually explicit manner" and attempted to grab Boyd. At this point, Crittenden physically straddled Rachel, "riding her like a pony" in front of Boyd. Later that evening, Boyd was again approached by Crittenden and Rachel. Crittenden lifted Rachel's blouse, flipped her bra away from her breasts and told Boyd to "[t]ouch them, touch them. You know you want them, touch them." In response, Boyd called for another employee, identified as Lois, who told Crittenden and Rachel to leave Boyd alone.

¶ 5    There was also a dispute over whether Jimmy's Place had posted its sexual harassment policy, as required by law. Boyd testified that she did not receive notice of any policy regarding sexual harassment, and while Crittenden testified that Jimmy's Place had a written policy, he was unable to clarify whether the policy had been distributed to employees.

¶ 6    The Commission found Boyd's testimony to be credible, but noted that the witnesses testifying in support of Crittenden were "simply not credible." During his testimony, Crittenden denied the occurrence of any incidents testified to by Boyd. At the hearing Crittenden called Rachel to testify, and she also denied the incidents described by Boyd. Crittenden called another patron and employee of Jimmy's Place, Rick Howard, who testified that he was present at Jimmy's Place that evening, but did not see the incidents occur. The Commission noted that Crittenden "appeared extremely nervous and continually swiveled his chair sharply while he testified." The Commission also found Rachel and Rick's testimony to lack credibility.

¶ 7    The Commission reached the conclusion that Crittenden's actions were "by any measure *** extreme in nature and sufficient to reach the 'severe and pervasive' standard articulated by this Commission and the courts." Furthermore, the Commission found that Crittenden's actions "had a severe impact on Ms. Boyd," as she had testified that she suffered resulting hair loss, aggravation of psoriasis, and anxiety.

¶ 8    The Commission awarded Boyd $41,670 in lost wages, $5,000 in compensatory wages,

---

[1]There is some question in the record as to the specific date the incident occurred. Boyd's original complaint alleged July 19, 2006, as the relevant date, but she testified at the administrative hearing that the incident took place on July 26, 2006. The Hearing Officer dismissed any potential significance in this discrepancy, finding that Boyd's testimony at the hearing was credible and consistent with other facts presented.

$5,000 in punitive damages, and attorney fees. The order also requires Crittenden to file a written compliance report with the Commission and to post appropriate notices. Crittenden filed a petition for writ of *certiorari*, challenging the Commission's decision and order, arguing among other things that the Commission lacked authority to award punitive damages and that there was no basis for the award of punitive damages.

¶ 9        The circuit court entered an order on July 22, 2011, confirming the decision of the Commission, concluding that the Commission's finding of sexual harassment was supported by the manifest weight of the evidence. On appeal, the appellate court affirmed the result and award of compensatory damages. The court, however, reversed the award for punitive damages, finding that the Commission was without authority to award punitive damages.

¶ 10                                    ANALYSIS

¶ 11       The Commission and Boyd argue that the Commission is authorized to award punitive damages for violations of the Ordinance. They maintain that the Commission has broad powers and that we should defer to the Commission's interpretation of the Ordinance. Further, Boyd and the Commission assert that punitive damages were appropriate in this case due to Crittenden's willful and wanton misconduct. In its *amicus* brief, IDC urges this court to affirm the appellate court. IDC argues that the Commission is without authority to award punitive damages under the Ordinance. Additionally, IDC raises public policy concerns with allowing an administrative agency, like the Commission, to award punitive damages where the legislature has not explicitly granted the agency that right.

¶ 12       Whether the Commission is authorized to award punitive damages is a question requiring interpretation of the Ordinance, which we review *de novo*. *Hamilton v. Industrial Comm'n*, 203 Ill. 2d 250, 254-55 (2003).

¶ 13       The Illinois Human Rights Act (Act) (775 ILCS 5/7-108 (West 2010)) authorizes a local government, like Cook County, to create a local commission to promote the purposes of the Act. Specifically, the Act authorizes the local commission "to secure for all individuals within the jurisdiction *** freedom from *** sexual harassment in employment." Accordingly, Cook County created the Commission, and the Commission argues that it is authorized to award punitive damages under the home rule authority granted to it in the Illinois Constitution. The Illinois Constitution provides that "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 14       Despite its broad home rule authority, the Commission, as an administrative agency, is limited to the powers granted to it by the legislature, and any actions it takes must be authorized by statute. *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 186 (2003). An agency "has no general or common law authority." *Vuagniaux*, 208 Ill. 2d at 186. "Any power or authority claimed by an administrative agency must find its source within the provisions of the statute by which the agency was created. The agency's authority must either arise from the express language of the statute or 'devolve by fair implication and

-4-

intendment from the express provisions of the [statute] as an incident to achieving the objectives for which the [agency] was created.' " *Vuagniaux*, 208 Ill. 2d at 187-88 (quoting *Schalz v. McHenry County Sheriff's Department Merit Comm'n*, 113 Ill. 2d 198, 202-03 (1986)).

¶ 15 Section 42-35(e) of the Ordinance aims to prohibit sexual harassment in the workplace. Cook County Code of Ordinances § 42-35(e) (2002). The Ordinance defines sexual harassment as "any unwelcome sexual advance, request for sexual favors, or conduct of a sexual nature when (a) submission to such conduct is an explicit or implicit term or condition of an individual's employment; or (b) submission to or rejection of such conduct by an individual is used as the basis for any employment decision affecting the individual; or (c) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Cook County Code of Ordinances § 42-35(e)(2) (2002). Under section 42-35(e)(1), "[n]o employer *** shall engage in sexual harassment." Additionally, the Ordinance provides that an employer is responsible for the acts of its agents and supervisory employees.

¶ 16 The Ordinance also establishes the relief available for violations. In relevant part, section 42-34(c) of the Ordinance provides that, "[r]elief may include, but is not limited to, an order to: a. Cease the illegal conduct complained of and to take steps to alleviate the effect of the illegal conduct complained of; b. Pay actual damages, as reasonably determined by the Commission, for injury or loss suffered; *** g. Pay the complainant all or a portion of the costs, including reasonable attorney's fees, expert witness fees, witness fees, and duplicating costs, incurred in pursuing the complaint before the Commission or at any stage of judicial review; h. Take such action as may be necessary to make the complainant whole, including, but not limited to, awards of interest on the actual damages and back pay from the date of the violation[.]" Section 42-35(c) also provides for additional relief such as requiring the employer to rehire the complainant, sell housing to the complainant, file a report of compliance with the Commission, or pay a small fine for each offense.

¶ 17 Boyd and the Commission argue that punitive damages are an available remedy under the Ordinance. While the Ordinance expressly authorizes compensatory damages, it does not expressly authorize punitive damages. Therefore, the Commission's authority to award punitive damages must be found by fair implication from the powers granted to it by the Ordinance. See *Vuagniaux*, 208 Ill. 2d at 187-88; *Schalz*, 113 Ill. 2d at 202-03.

¶ 18 In support of their position, Boyd and the Commission maintain that the Commission has implicit authority to award punitive damages. First, they note that the ordinance includes a nonexhaustive list of available remedies by providing that "[r]elief may include, but is not limited to" the listed remedies. According to Boyd and the Commission, the Commission is authorized under its broad home rule authority to include punitive damages as an available remedy. They point to the rule requiring courts to give substantial weight and deference to the Commission's interpretation of the Ordinance. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46 (2002). In *In re Gluszek*, Cook County Comm'n on Human Rights, No. 1993E052 (Decision & Order Mar. 16, 1995), the Commission concluded that "[p]unitive damages are available as relief under the Ordinance." The Commission looked to the purposes of punitive damages, specifically the purpose to punish the violator and to deter

others from future violations in reaching this conclusion. Boyd and the Commission maintain that this court should defer to the Commission's conclusion that it was authorized to award punitive damages.

¶ 19　We "give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing that statute." *People ex rel. Birkett*, 202 Ill. 2d at 46. But at the same time, "[c]ourts *** are not bound by an agency's interpretation that conflicts with the statute, is unreasonable, or is otherwise erroneous." *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007).

¶ 20　As acknowledged by Boyd and the Commission, the Ordinance does not expressly authorize punitive damages. Instead, Boyd and the Commission point to *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 495 (2011), in support of their position that the Commission has implicit authority to award punitive damages. In *Vincent*, we considered the availability of punitive damages under the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2006)). While the Nursing Home Care Act does not expressly authorize punitive damages, this court held that a plaintiff may recover common law punitive damages after a showing of willful and wanton misconduct.

¶ 21　Boyd and the Commission argue that, as shown in *Vincent*, this court has allowed a plaintiff to seek common law punitive damages for a statutory violation, even when the statute does not expressly authorize punitive damages, when the defendant engaged in willful or wanton misconduct. But, as noted above, as an administrative agency, the Commission lacks common law powers. *Vuagniaux*, 208 Ill. 2d at 186. For example, in *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 113 (1976), this court held that as an administrative agency lacking common law powers, the Fair Employment Practices Commission is powerless to award attorney fees absent express statutory authority to do so. Likewise, the Commission also lacks common law powers and therefore is without authority to award common law punitive damages absent express authority.

¶ 22　Furthermore, there are several other instances where the legislature or a home rule unit has chosen to expressly authorize punitive damages. Under the Toxic Substances Disclosure to Employees Act (820 ILCS 255/17(e) (West 2010)), the Director of the Department of Labor may impose punitive damages in the case of a knowing and willing violation. Furthermore, under the Environmental Protection Act (415 ILCS 5/22.2(k) (West 2010)), the Pollution Control Board is authorized to impose punitive damages when an individual who is liable for the release of a hazardous substance fails, without sufficient cause, to provide removal or remedial action upon the Pollution Control Board's request. Home rule units of government have also expressly authorized their local units to award punitive damages. The Cook County Forest Preserve District is authorized to impose a 2% penalty as a punitive damage assessment against any employer that fails to pay the prevailing wage mandated for public works employees. Forest Preserve District of Cook County Code of Ordinances § 1-8-3(H) (2012). Additionally, the fair housing review boards of several local governments in Illinois are specifically authorized by their local ordinances to award punitive damages. Burnham, Ill., Code of Ordinances § 46-63 (1997); Sauk Village, Ill., Code of Ordinances § 96.10 (1986); Ford Heights, Ill., Code of Ordinances, § 24-300 (2009); Lynwood, Ill., Code of Ordinances § 54-232 (1997); Melrose Park, Ill., Code of Ordinances § 9.28.120 (1995).

¶ 23    This court has long held that punitive damages are not favored under the law. *Slovinski v. Elliott*, 237 Ill. 2d 51, 58 (2010); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 188 (1978); *Eshelman v. Rawalt*, 298 Ill. 192, 197 (1921). We have urged courts to take caution to ensure that punitive damages are not improperly or unwisely awarded. *Slovinski*, 237 Ill. 2d at 58; *Kelsay*, 74 Ill. 2d at 188; *Eshelman*, 298 Ill. at 197 (requiring courts to "exercise a high degree of watchfulness to prevent [punitive damages] from being perverted and extended beyond the real principles upon which [they are] based"). The Code of Civil Procedure provides one method by which courts can protect against unwarranted punitive damages. Section 2-1207 of the Code (735 ILCS 5/2-1207 (West 2010)) allows the trial court to "determine whether a jury award for punitive damages is excessive, and if so, enter a remittitur and a conditional new trial."

¶ 24    The Commission's conclusion that it is implicitly authorized to award punitive damages conflicts with our court's long-standing precedent that punitive damages are not favored under the law. When the legislature and local home rule units intend to authorize punitive damages, they have done so through express authorization in statutes and ordinances, as shown above. Furthermore, as an administrative agency, the Commission lacks power to award common law punitive damages. Therefore, we will not defer to the Commission's interpretation, here, where its interpretation was erroneous and against this court's long-standing precedent.

¶ 25    In *Page v. City of Chicago*, the appellate court considered whether the City of Chicago's Commission on Human Rights (Chicago Commission) has the authority to award punitive damages. *Page v. City of Chicago*, 299 Ill. App. 3d 450 (1998). Chicago's ordinance contains similar language to the Cook County ordinance and authorizes the Chicago Commission "to order such relief as may be appropriate under the circumstances determined in the hearing. Relief may include but is not limited to an order: *** to pay actual damages, as reasonably determined by the Commission, for injury *** suffered by the complainant." Chicago Municipal Code § 2-120-510(*l*) (amended 2012). The court in *Page* gave four reasons for its conclusion that the Chicago Commission is authorized to award punitive damages. First, the Chicago ordinance "calls for such 'relief as may be appropriate' and does not limit the relief to specific damage categories or exclude punitive damages." Second, the Chicago Commission had interpreted that language to include punitive damages. Third, the Chicago ordinance contains language for relief similar to the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/10a (West 2010)), which has been interpreted to allow for punitive damages. See *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 81-82 (1994). Finally, the court noted that punitive damages would allow the Chicago Commission to punish individuals for wrongful sexual harassment and discrimination, to deter the violator from repeating the offense, and deter others from committing the same violations.

¶ 26    Boyd and the Commission argue that because Chicago and Cook County are both home rule entities, and because the ordinances contain similar remedy language, the decision in *Page* should be controlling here. The Commission and Boyd also argue that the holding in *Page* was reaffirmed in *1212 Restaurant Group, LLC v. Alexander*, 2011 IL App (1st) 100797. The court in *1212 Restaurant Group*, however, merely assumed the court's position

in *Page* that the Commission is authorized to award punitive damages and did not engage in any independent discussion of this issue.

¶ 27 We agree with the appellate court's conclusion that the reasoning in *Page* is unpersuasive. First, although the Chicago ordinance does not limit the relief to specific categories of remedies or exclude punitive damages, it does not expressly authorize punitive damages. There has been no other instance where an administrative agency has been found to have implicit authority to award punitive damages. Next, while we generally defer to an administrative agency's interpretation of its ordinance, for the same reasons addressed above, the Chicago Commission's interpretation was also erroneous as it is against long-standing precedent against punitive damages. As mentioned, punitive damages are not favored in the law. *Slovinski*, 237 Ill. 2d at 58. It is the court's role to ensure that punitive damages are not improperly or unwisely awarded. *Id*. Here, as in *Page*, an administrative agency rather than a court determined it was authorized to award punitive damages. Judicial proceedings provide additional protections not available at administrative hearings. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92-95 (1992) (noting that while concepts of due process apply to administrative hearings, " 'procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding' " (quoting *Telcser v. Holzman*, 31 Ill. 2d 332, 339 (1964))); see also *Desai v. Metropolitan Sanitary District of Greater Chicago*, 125 Ill. App. 3d 1031, 1033 (1984) ("administrative procedure is simpler, less formal and less technical than judicial procedure").

¶ 28 The court in *Page* also compared the ordinance to the Consumer Fraud Act, concluding that because the Consumer Fraud Act has been found to authorize punitive damages, so does the ordinance. We find this reasoning unpersuasive. The Consumer Fraud Act provides that "[t]he court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a) (West 2010). It then explicitly prohibits punitive damages in cases where the defendant is a new or used vehicle dealer or a holder of a retail installment contract, unless the defendant engaged in willful or intentional misconduct done with "evil motive or reckless indifference to the rights of others." 815 ILCS 505/10a(a) (West 2010). Like both the Cook County and Chicago ordinances, the Consumer Fraud Act does not provide an exhaustive list of remedies. However, under the Consumer Fraud Act, punitive damages are awarded by the judge in a court action, not by an administrative agency.

¶ 29 Boyd and the Commission also urge this court to consider the policy implications in this case. They argue that allowing punitive damages in administrative cases involving sexual harassment would further the purposes that punitive damages are intended to serve. In support of this argument, Boyd and the Commission note the argument made by the appellate court in *Page*. In *Page*, the appellate court concluded that punitive damages were an appropriate remedy for acts of sexual harassment because punitive damages allow the Commission to punish the individual, deter the individual from engaging in the unlawful conduct again, and deter others from engaging in sexual harassment. Encouraging this court to adopt the position from *Page*, Boyd and the Commission maintain that compensatory damages do not sufficiently deter sexual harassment in the workplace. They argue that

Crittenden's conduct in this case evinces a high degree of moral culpability and that Crittenden acted intentionally, inappropriately, and offensively. In support of this position, the Commission argued at oral argument that this court has before suggested that sexual harassment is more egregious than some torts, such as false picketing. *International Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456 (2006). *Lowe Excavating Co.*, however, involved a discussion of whether a punitive damages award was constitutional, not whether an administrative agency was authorized to award punitive damages.

¶ 30    Other policy implications must be considered. Because punitive damages are not favored in the law, " 'the courts must take caution to see that punitive damages are not improperly or unwisely awarded.' " *Slovinski*, 237 Ill. 2d at 57-58 (quoting *Kelsay*, 74 Ill. 2d at 188). As we noted above, in discussing the comparison to the Consumer Fraud Act and the agency's lack of common law powers, an administrative agency's powers are not equal to that of a court. Court proceedings provide additional protections to ensure that punitive damages are not " 'improperly or unwisely awarded.' " *Id*.

¶ 31    Additionally, this case presents a risk of an employer being held liable for punitive damages stemming from acts committed by its employee. Under the Ordinance, "[a]n employer is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence." Cook County Code of Ordinances § 42-35(e) (2002). In *Mattyasovszky v. West Towns Bus Co.*, 61 Ill. 2d 31, 36-37 (1975), this court discussed the risk of permitting punitive damages in cases where the defendant is only vicariously liable. In those cases, the individual primarily responsible for the injury may not be a party to the lawsuit. As the Ordinance provides for vicarious liability for employers, this risk is directly implicated here.

¶ 32    Crittenden's actions toward Boyd were clearly reprehensible and outrageous. It is important to discourage this type of behavior from the workplace, and the Commission appropriately compensated Boyd with lost wages, compensatory damages, and attorney fees. The Commission, however, lacked authority to also award Boyd punitive damages.

¶ 33                                            CONCLUSION

¶ 34    Neither the Act, nor the Ordinance, provides the Commission with the express authority to award punitive damages. If the legislature or the home rule unit intended to authorize punitive damages, it would have done so through express authorization, as other units of government have done. As an administrative agency, the Commission was also without authority to award common law punitive damages. Because we determine that the Commission lacked authority to award punitive damages, we need not consider whether punitive damages were appropriate in this case.

¶ 35    The judgment of the appellate court is therefore affirmed.

¶ 36    Affirmed.