2021 IL App (1st) 191842-U

No. 1-19-1842

Order filed March 5, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PRATE ROOFING AND INSTALLATIONS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CH 9826 |
| | ) | |
| LIBERTY MUTUAL INSURANCE CORPORATION, | ) | The Honorable |
| THE ILLINOIS DEPARTMENT OF INSURANCE, | ) | Caroline Kate Moreland, |
| ROBERT H. MURIEL, in His Official Capacity as | ) | Judge, Presiding. |
| Director of Insurance, and PATRICK RILEY, in His | ) | |
| Capacity as Hearing Officer, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The Department of Insurance did not have authority to determine whether Prate's subcontractor's employees triggered additional premiums on its workers' compensation insurance held by Liberty Mutual. Therefore, we vacated the Department of Insurance's final order and the circuit court's affirmance thereof. The circuit court properly dismissed the hearing officer as an unnecessary party and

dismissed the declaratory judgment count without prejudice for lack of subject matter jurisdiction.

¶ 2    Plaintiff Prate Roofing and Installations, LLC (Prate) appeals an order from the Circuit Court of Cook County which affirmed the final decision of the Director of the Illinois Department of Insurance (DOI) in favor of defendant, Liberty Mutual Insurance Company (Liberty Mutual), and against plaintiff, Prate, regarding the parties' workers' compensation insurance dispute. The parties disputed whether Prate owed Liberty Mutual additional workers' compensation insurance premiums because certain subcontractors hired by Prate did not have individual coverage. Prate challenged that determination before the DOI, which agreed with Liberty Mutual following a hearing before Hearing Officer Patrick Riley (Riley). Then Director of the DOI, Jennifer Hammer,[1] entered an order finding that Prate owed additional workers' compensation premiums in the amount of $127,305.

¶ 3    Prate subsequently filed suit in the circuit court of Cook County, seeking administrative review of the Director's final decision and an additional claim for declaratory judgment as to the amount of the premium owed to Liberty Mutual. The circuit court affirmed the Director's decision and dismissed the claim for declaratory judgment.

¶ 4    Prate has timely appealed, contending that: (1) the DOI lacked authority to issue its final order, which is therefore void pursuant to this court's holding in *CAT Express, Inc. v. Muriel and Liberty Mutual Insurance Co.*, 2019 IL App (1st) 181851; (2) the circuit court erred in dismissing its request for declaratory relief on an issue upon which the DOI had expressly declined and lacked

_____

[1] At the time of the Director's final order, the Director of the Department was Jennifer Hammer, who was initially named as an appellee in this case. She has been succeeded in that position by Robert H. Muriel. We have amended the caption of this appeal to reflect the proper party pursuant to section 2-1008(d) of the Code of Civil Procedure. 735 ILCS 5/2-1008(d) (West 2020).

authority to rule; and (3) the DOI erred in finding that ARW LLC had its own employees who worked on Prate jobs to justify Liberty Mutual's charging an addition premium of $127,305. For the reasons that follow, we vacate the DOI's final order as it lacked authority to resolve the parties' dispute, and further vacate the judgment of the circuit court affirming the DOI's order as such order was void.

¶ 5                                    BACKGROUND

¶ 6                         A. Proceedings Before the DOI

¶ 7     This case came before the DOI on appeal by Prate after it initially sought administrative relief from the Illinois Workers Compensation Appeals Board (Board). Prate filed an appeal with the Board to contest Liberty Mutual's determination that it owed additional workers' compensation premiums in the amount of $127,305. In May 2016, the Board held a hearing on Prate's dispute and issued its case summary and decision on June 2, 2016, which was disclosed to the parties in a letter from the National Council on Compensation Insurance (NCCI). In its letter, the NCCI informed the parties that the Board did not have enough information to rule on whether Liberty Mutual improperly charged Prate for exposure to liability due to Prate's use of a possibly uninsured subcontractor. The letter also notified Prate of its right to appeal, and subsequently appealed the decision to the DOI.

¶ 8     Hearing Officer Riley was assigned to the case. Following discovery, both parties agreed to waive their rights to an in-person hearing before the DOI and requested that the issues be determined by written submissions and exhibits. Upon review of the submissions and exhibits, Hearing Officer Riley made the following written findings of fact, conclusions of law and recommendations.

¶ 9     Defendants aside, there are four entities relevant to this case: Prate, ARW Roofing, Inc. (ARW, Inc.), Reliable Trade Services, Inc. (RTS), and ARW LLC.  Prate was a roofing and construction installations contractor and Illinois limited liability company[2], owned by Cynthia Rosetti.  Michael Prate (M. Prate) was a former agent and officer of Prate, but currently serves as an employee.  ARW Inc. was an Illinois company that entered into agreements with Prate for contracting services.  ARW Inc. was involuntarily dissolved in August 2015.  RTS was an Illinois corporation which also entered into contracts with Prate. ARW LLC was a limited liability company organized by Emmolly Corporation (Emmolly), of which M. Prate was President.  ARW LLC also entered into contracts with Prate during the policy period at issue.

¶ 10     According to Prate, from May 1, 2013, to May 1, 2014, ARW Inc. carried workers' compensation insurance. On August 1, 2013, RTS was formed and listed ARW Inc.'s policy as its workers' compensation coverage, claiming that ARW Inc.'s name was changed to RTS.

¶ 11     In 2013, Prate sought and obtained workers' compensation coverage through the Illinois Assigned Risk Plan. Liberty Mutual was randomly assigned as Prate's workers' compensation insurance carrier, and issued an initial policy that became effective on October 18, 2013. Liberty Mutual issued Prate a renewal policy (WC5-34S-540426), which is the policy at issue, that was effective October 18, 2014, through June 28, 2015.  Pursuant to the policy provisions, in 2015, Prate was subject to both a self-audit and a premium audit.  The premium audit would be conducted by Liberty Mutual to determine if Prate had properly provided workers' compensation insurance

_____

[2] Although the hearing officer's written findings describe Prate as a "limited liability corporation," we take judicial notice that in the State of Illinois, LLC refers to a limited liability company.

certificates for all of its subcontractors; Lisa Murphy (Murphy) was assigned as the auditor for Liberty Mutual's audit.

¶ 12    As part of the self-audit, Prate disclosed that it had made payments to RTS, ARW Inc., and ARW LLC between October 18, 2014, and June 28, 2015.  Murphy testified that, while Prate provided certificates of workers' compensation insurance coverage for RTS, it did not present one for ARW LLC.  Based on those findings, Liberty Mutual argued before the DOI that Prate utilized services from ARW LLC, which did not carry workers' compensation coverage, and thus exposed Liberty Mutual to liability, for which it assessed Prate an additional premium of $127,305.

¶ 13    Conversely, Prate argued that, because ARW LLC had no employees, that entity could not perform work which would need to be covered under Illinois workers' compensation law or the NCCI Basic Manual[3], and thus Prate did not expose Liberty Mutual to liability. Prate further argued that it would be improper to factor any payments to that entity into Liberty Mutual's premium calculations.

¶ 14    Riley further found that it was undisputed that Prate contracted with several subcontracting entities:  in 2013, Prate subcontracted with ARW Inc. and in August 2013, Prate subcontracted with RTS, which listed the workers' compensation policy used by ARW Inc. At issue was whether Liberty Mutual justifiably assessed Prate an additional premium for its use of services by ARW LLC, which it deemed an uninsured contractor.  Riley noted that the central questions to be considered were: (1) did ARW LLC have a workers' compensation insurance policy during Prate's

_____

[3] The NCCI Basic Manual for Workers Compensation and Employers Liability Insurance contains rules, classification descriptions, rates/loss costs for each classification and state-specific exceptions for writing workers compensation insurance.
https://www.ncci.com/ServicesTools/Pages/BM2001.aspx

period of coverage at issue in the hearing; (2) did ARW LLC have any employees who were required to be covered according to Prate's policy; (3) did the arrangements between Prate and ARW LLC expose Liberty Mutual to workers' compensation liability and subject Prate to an increased premium; and (4) if Liberty Mutual was exposed to liability from ARW LLC, did Liberty Mutual appropriately use certain payments from Prate to ARW LLC as the basis for calculating the additional premium.

¶ 15    With respect to the first question, Riley found that it was undisputed that ARW LLC did not have a workers' compensation insurance policy of its own during Prate's policy period of October 2014 through June 2015.  Riley noted that, "a common pattern in the filings offered [by the parties] that initially complicates th[e] determination [was] the conflation of ARW LLC with ARW Inc." As an example, Riley noted that both parties refer to an NCCI ownership name change ruling regarding "a subcontractor ARW." However, the NCCI did not define which "ARW" was the subject of its ruling.  Additionally, the NCCI stated that "Board could not confirm or refute whether the legal status issue of ARW being an 'LLC' or an 'Inc.' when work was performed had a bearing on the dispute." In August 2013, when RTS was formed, it obtained workers' compensation insurance. According to M. Prate, Emmolly organized ARW LLC for the purpose of purchasing ARW Inc., but the purchase did not occur, and he further claimed that Emmolly signed over ownership of ARW Inc. to Michael Gurdak (M. Gurdak).  M. Prate further stated that M. Gurdak should have filed the documentation with the Secretary of State, indicating some ambiguity as to the status of ownership, but confirmed that ARW Inc. and ARW LLC were two separate organizations. Riley also found that M. Prate and M. Gurdak, along with Rosetti, were knowledgeable about the status and business dealings of the two entities, as detailed in affidavits

and answers to Liberty Mutual's interrogatories. Riley ultimately concluded that ARW Inc. and ARW LLC were legally independent of one another despite common ownership or management, and further that ARW LLC did not have insurance coverage, either independently or in association with another entity during the policy period at issue.

¶ 16    Regarding the second issue, Riley noted Prate's assertion that ARW LLC had no employees; instead, the labor was supplied by RTS. That assertion was echoed by both M. Prate and M. Gurdak in their respective affidavits. However, based on other information supplied during discovery, Riley concluded that ARW LLC was considered a separate entity for the purposes of workers' compensation coverage and that ARW LLC likely had employees to carry out contracts on behalf of Prate and/or RTS. Most notably, Prate supplied several documents that listed RTS at the top and appeared to be proofs of payment by RTS to ARW LLC for workers' compensation payroll during the policy period at issue.  This was a further indication that ARW LLC had its own employees for which RTS covered the cost of exposure. Prate had the opportunity to provide an alternative explanation for those payments through its answers to Liberty Mutual's interrogatories, but did not. Thus, Hearing Officer Riley specifically found that ARW LLC had employees during the policy period at issue.

¶ 17    With respect to the third issue, Riley noted that Prate and its subcontractors with employees were required to carry workers' compensation coverage under section 305/1(a)(3) of the Illinois Workers Compensation Act (Act). 820 ILCS 305/1(a)(3) (West 2018). That section provides that, if a subcontractor, such as ARW LLC, had employees but did not have the requisite workers' compensation coverage, then a contractor, such as Prate, that engaged the subcontractor to do work would be liable to pay compensation to the subcontractor's employees.  820 ILCS 305/1(a)(3)

(West 2018). Further, section 305/4(a)(3) of the Act provides that the general contractor and any subcontractors who fall within the provisions of section 3 of the Act must insure the entire liability of all employees and the entire compensation liability of the insured. 820 ILCS 305/4(a)(3) (West 2018).

¶ 18    Hearing Officer Riley found that because Prate's policy must cover "the entire compensation liability of the insured," and because Prate would be liable to pay compensation to ARW LLC's employees if ARW LLC lacked its own coverage, Liberty Mutual would be required by law to assume that liability under the circumstances. It followed then that Prate was required both to secure workers' compensation coverage for itself as principal and to ensure that ARW LLC had coverage as a subcontractor. Based on the prior findings that ARW LLC had employees during the policy period but lacked its own coverage, Hearing Officer Riley found that Liberty Mutual was exposed under Prate's policy to workers' compensation liability from ARW LLC's employees.

¶ 19    With respect to the final issue, Riley noted that the contract language in the policy stated that the premium included "payroll and other remuneration[4] paid," which included "the insured's direct employees" and "all other persons engaged in work that could make [Liberty Mutual] liable." Under the Act, Riley found that the ARW LLC employees could have made Liberty Mutual liable, so it was proper to assess some amount of premium for them. Prate disputed that its insurance coverage was also bound by Rule 2-H of the NCCI Basic Manual, which states that "the

---

[4] Remuneration is payment for work or services.
https://dictionary.cambridge.org/us/dictionary/english/remuneration

contractor must furnish satisfactory evidence that the subcontractor has workers['] compensation insurance in force." Nevertheless, Riley noted that the binder of coverage initially issued to Prate stated that coverage was provided under the state's workers' compensation laws "in accordance with the Plan rules," and that coverage would be given "under the applicable Workers' Compensation Insurance Plan developed or administered by NCCI." As such, Riley found that Prate "contractually consented to the laws of Illinois and specific rules of the NCCI," that allowed for the "determination of a premium based upon uninsured subcontractors with employees engaged in work for the policyholder."

¶ 20 According to the policy at issue's provision regarding premiums, Liberty Mutual could only assess a premium "determined by multiplying a rate times a premium basis," which included "payroll and all other remuneration paid or payable during the policy period for services of: 1) all your officers and employees engaged in work covered by th[e] policy; and 2) all other persons engaged in work that could make [Liberty Mutual] liable under Part One of th[e] policy." The policy further provided that if the insured did "not have payroll records for [those] persons, the contract price for their services and materials may be used as the premium basis." Accordingly, Riley found that, under the terms of the policy, Liberty Mutual could charge a premium based on the contract price for ARW LLC's services and materials for Prate during the policy period at issue, which would be reflected in Prate's payments to ARW LLC.

¶ 21 Despite Prate's argument that it would be improper to factor any payments to ARW LLC into Liberty Mutual's premium calculations, Riley found that given Prate's "apparent inability" to supply any payroll records for the ARW LLC employees or supply sufficient financial records from ARW LLC showing that there were no employees, there was no other basis for estimating

the applicable payroll and other remuneration for the employees. Further, Riley found that Liberty Mutual had no contractual or statutory right to audit ARW LLC directly to obtain those records based on prior DOI precedent, and as such, it was permitted to use the contract price for services and materials as the basis for premium.

¶ 22    In her affidavit, Murphy averred that during her audit of Prate, she found that the total payments made by Prate to ARW LLC was $300,673.46.[5] After excluding 10% for materials, a total of $270,606.20 was added to Prate's audited payroll exposure. In a letter sent to the NCCI by Liberty Mutual, Murphy stated that the additional premium was calculated according to Tables 1 and 2 of Rule 2-H of the Basic Manual.  Rule 2-H provided for the additional premium to be calculated based on "not less than 90% of the subcontract price" for labor only. Hearing Officer Riley found that Liberty Mutual permissibly used an estimated payroll amount of $270,606.20, which was 90% of the total subcontract price between ARW LLC and Prate, as the basis for calculating the additional premium owed by Prate.

¶ 23    Hearing Officer Riley concluded, "based upon a preponderance of the evidence and upon consideration of the Record as a whole or such portion thereof as may be supported by competent material and substantial evidence," Liberty Mutual's calculation of the additional premium due to the policy at issue should be upheld. Therefore, Riley recommended to the Director of the DOI that: Liberty Mutual was entitled to the premium charges assessed to Prate regarding workers' compensation policy number WC5-34S-540426-024, and that the costs of the proceeding be waived.

---

[5] This figure was based on Prate's profit and loss statement for the period between October 18, 2014 and June 28, 2015 that was sent to Liberty Mutual as part of its self-audit.

¶ 24    On May 7, 2018, the Director of the DOI adopted the hearing officer's findings of fact, conclusions of law, and recommendations, and ordered that Liberty Mutual was entitled to the disputed premium charges.

¶ 25                              B. Prate's Motion for Rehearing

¶ 26    Prate subsequently filed a motion for rehearing on May 15, 2018.  The DOI found that: Prate failed to demonstrate good cause or legally sufficient grounds to reopen the matter; did not offer satisfactory explanations to counter the DOI's conclusion that ARW LLC possessed employees, and was thus liable to Liberty Mutual for additional workers' compensation coverage; Prate offered no evidence that Liberty Mutual incorrectly calculated the additional premium; and Prate asserted conclusory statements on the weight of the evidence and application of law, but did not provide evidence that would alter the analysis upon which the final order rested.  However, the DOI stated that "it [was] not for the Department to determine the specific amount of the premium charge, but that the parties under the contract conduct themselves within the statutory and regulatory bounds of Illinois law." The DOI denied Prate's motion for rehearing on July 10, 2018.

¶ 27                              C. Circuit Court Proceedings

¶ 28    Prate then filed its complaint for administrative review and additionally sought a declaratory judgment concerning the correct amount of the additional premium owed to Liberty Mutual in the circuit court of Cook County on August 1, 2018.

¶ 29    The DOI filed a section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss Hearing Officer Riley as an unnecessary party and to dismiss Prate's request for declaratory relief, arguing that its sole remedy was administrative review.  Prate responded that it was entitled to declaratory relief since the DOI indicated that it was not its job to determine the specific amount of premium

due. On December 12, 2018, the circuit court dismissed Riley as a defendant and dismissed the declaratory judgment count of Prate's complaint as procedurally improper, both without prejudice. The court's order did not contain Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) language. The circuit court affirmed the Director's final order on August 14, 2019. This timely appeal followed.

¶ 30                                    ANALYSIS

¶ 31     On appeal, Prate contends that: (1) the DOI lacked authority to issue its final order, which is therefore void pursuant to this court's holding in *CAT Express, Inc. v. Muriel and Liberty Mutual Insurance Co.*, 2019 IL App (1st) 181851; (2) the circuit court erred in dismissing its request for declaratory relief on an issue upon which the DOI had expressly declined and lacked authority to rule; and (3) the DOI erred in finding that ARW LLC had its own employees who worked on Prate jobs to justify Liberty Mutual's charging an addition premium of $127,305.

¶ 32                              A. Jurisdiction

¶ 33     As a preliminary matter, we address the issue of jurisdiction, as raised by the DOI in its brief. The DOI contends that a potential jurisdiction question arises because the circuit court's dismissal, of Riley as a defendant and the declaratory judgment count of Prate's complaint without prejudice, was not a final judgment. Additionally, the order entered on August 14, 2019, did not contain Rule 304(a) (eff. Mar. 8, 2016) language. Further, the DOI asserts that the circuit court "seemed to intend the words 'without prejudice' to convey that it would entertain further argument while the administrative review action (count I) was pending, and not that it wished to preserve the claims (the count II declaratory action and the claims as against Riley) for refiling in the future."

¶ 34    While Liberty Mutual's brief does not contain any statement related to this court's jurisdiction to hear the appeal, Prate, on the other hand, contends that its appeal is from a final judgment under Rule 301 (Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). The appeal challenges both the circuit court's December 12, 2018 order, which dismissed its declaratory judgment count, and the final order of August 14, 2019, which affirmed the DOI's final order. Based thereon, Prate contends that this court has jurisdiction to hear its appeal.

¶ 35    We begin by noting that a reviewing court has a duty to *sua sponte* consider whether or not it has jurisdiction. *In re Estate of Young*, 2020 IL App (2d) 190392, ¶ 16. A challenge to our jurisdiction is a question of law. *JP Morgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 21. Questions of law are subject to *de novo* review. *Id.*

¶ 36    While Prate asserts that this court has jurisdiction based on entry of a final judgment in the circuit court, we find that such conclusion is not immediately clear on the face of the record. In this case, the circuit court previously granted the DOI's section 2-615 (735 ILCS 5/2-615 (West 2018)) motion to dismiss both a defendant and count II of the complaint without prejudice. Thus, we must consider the effect of the circuit court's December 12, 2018, dismissal order on the jurisdiction of this court.

¶ 37    We begin by noting that the DOI filed a section 2-615 motion to dismiss Hearing Officer Riley as an unnecessary party and Prate's declaratory judgment count (count II) for lack of subject matter jurisdiction. However, the DOI should have filed a section 2-619 (735 ILCS 5/2-619 (West 2018)) motion to dismiss. A section 2-615 motion allows for the dismissal of the complaint (or portion thereof) where the pleading is legally insufficient based on defects apparent on its face. 735 ILCS 5/2-615 (West 2018). Conversely, a section 2-619 motion to dismiss admits the

sufficiency of the complaint but asserts an affirmative matter acts to defeat the claim. 735 ILCS 5/2-619 (West 2018).

¶ 38    In this case, there were affirmative matters raised by the DOI that defeated portions of plaintiff's claims. With respect to count I, the DOI sought dismissal of Riley because he was not a necessary party to the administrative review action. With respect to count II, the DOI sought dismissal because the circuit court lacked subject matter jurisdiction to review a claim for declaratory judgment in an administrative review case. These matters should have been raised in a section 2-619 motion and were improperly raised in a 2-615 motion.

¶ 39    Ordinarily, the failure to properly designate a motion to dismiss would result in reversal if prejudicial to the nonmovant. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). However, in this case, because we find that the parties were not prejudiced by the mislabeling as will be further detailed below, in the interest of judicial economy, we will treat the improperly designated motion to dismiss as if it were properly designated when filed. *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994).

¶ 40    Turning our attention to the jurisdiction question, the Illinois Constitution provides for appellate jurisdiction to hear appeals from all final judgments entered in the circuit court. Ill. Const. 1970, art. VI, § 6. The Constitution also grants our supreme court the authority to provide by rule for appeals from less than final judgments. *Id.* Absent an applicable supreme court rule, this court may not exercise appellate jurisdiction over a judgment, order or decree which is not final. *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). Supreme Court Rules 301 and 304 provide the jurisdictional basis for appealing final judgments. *Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 921 (1999).

¶ 41 Generally, an order of dismissal entered "without prejudice" is a nonfinal order and is not appealable. *Ally Financial Inc. v. Pira*, 2017 IL App (2d) 170213, ¶ 28. However, motions to dismiss that were granted without prejudice become part of the final ruling on the case when no interlocutory appeal is taken or where the order contains no Rule 304(a) (eff. Mar. 8, 2016) language. Thus, the circuit court's rulings on the DOI's motion to dismiss, even though granted without prejudice in the December 12, 2018, order, are final orders and are properly part of our jurisdiction over the final ruling in the case. See *Reed v. Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago*, 376 Ill. App. 3d 259, 267 (2007) (once a final order has been entered in a case, all nonfinal orders previously entered may be reviewed by the appellate court).

¶ 42 Therefore, once the entire action terminated on August 14, 2019, Prate could file its notice of appeal for all orders entered by the circuit court. Accordingly, we find that we have jurisdiction over this appeal pursuant to Rule 301 (eff. Feb. 1, 1994), and turn to the merits of the appeal.

¶ 43                                  B. The DOI's Authority to Issue Its Order

¶ 44 Prate first contends that the DOI acted without authority when it issued its final order and therefore, the order is void. Prate argues that this court's decision in *CAT Express*, which was issued after Prate filed its notice of appeal, is dispositive. According to Prate, we held in *CAT Express* that the DOI did not have express or implied statutory authority to resolve a private dispute between an insurer and its insured, thereby making the DOI's final order void. *CAT Express*, 2019 IL App (1st) 181851, ¶ 35.

¶ 45 The DOI agrees with Prate's contention that under the authority of this court's decision in *CAT Express*, the DOI and ultimately the Director lacked general authority to resolve the parties'

dispute. Rather, the DOI's specific statutory authority is found in section 462 of the Act (215 ILCS 5/462 (West 2018)), and it applies only to disputes about the " 'application' of the NCCI's experience rating plan, classification system, and manual rules." Additionally, the DOI maintains that this court characterized the DOI's authority under the Act as specific and limited, which is not implicated just because the matter in dispute had some relevance to the rules. Thus, the DOI concludes that the decision cannot stand.

¶ 46    Liberty Mutual, however, disagrees with the conclusion that *CAT Express* is dispositive of this appeal. Instead, Liberty Mutual contends that *CAT Express* is distinguishable from the present case because here the DOI's authority comes from section 462 of the Code (215 ILCS 5/462 (West 2018)), and not section 401 (215 ILCS 5/401 (West 2018)) as in the *CAT Express* case.

¶ 47    We disagree. Our review of *CAT Express* establishes that it is dispositive of the merits of this appeal. In *CAT Express*, the parties had an employment status dispute; we note that Liberty Mutual was also a defendant in that case. Similar to Prate, CAT Express applied to the Illinois Assigned Risk Plan for workers' compensation insurance coverage, and coverage was assigned to Liberty Mutual. *CAT Express*, 2019 IL App (1st) 181851, ¶ 1. CAT Express disclosed six clerical workers subject to workers' compensation coverage. *Id.* After a premiums audit, Liberty Mutual determined that CAT Express employed a substantial number of owner-operators that were not disclosed as employees. Liberty Mutual consequently determined that CAT Express owed $356,592 in additional premiums to cover the exposure related to the owner-operators. *Id.* CAT Express disagreed, arguing that its contracts with the owner-operators established an independent contractor relationship and not an employer-employee relationship. *Id.* CAT Express sought resolution of the issue from the NCCI, who determined that it had no jurisdiction over the dispute

and advised CAT Express to appeal to the DOI. *Id.* After a hearing at the DOI, the Director adopted the hearing officer's findings of fact, conclusions, and recommendations as follows: 1) Liberty Mutual correctly determined that CAT Express' owner-operators were employees rather than independent contractors, and 2) CAT Express was liable for the additional premiums. *Id.* The DOI denied CAT Express' motion for reconsideration, and the circuit court affirmed the DOI's order. *Id.*

¶ 48    CAT Express appealed, and this court subsequently ordered supplemental briefs from the parties on the issue of whether the DOI and the Director had authority to resolve the parties' dispute and to specifically address the applicability of section 462 of the Code (215 ILCS 5/462 (West 2018)). *Id*. at ¶¶ 2, 9. This court concluded that the DOI did not have express or implied authority to resolve the employment status dispute as it did not directly or indirectly involve the DOI's or the Director's authority to administer the insurance laws of this state. *Id.* We found that the DOI acted beyond its authority in conducting the hearing and issuing the final order. *Id.*

¶ 49    In reaching that conclusion, we noted that the parties, the DOI and the Director all acknowledged that the DOI did not have express authority to adjudicate employment status disputes under the Code. *Id.* at ¶ 10. The DOI and the Director, however, asserted that implied authority existed to adjudicate employment status disputes under sections 401, 402, 403 and 462 of the Code (215 ILCS 5/401, 5/402, 5/403, 5/462 (West 2018)), which was derived from section 401(c), which expressly allowed the Director to conduct hearings as may be "necessary and proper for the efficient administration of the insurance laws of this State," (*Id.* at §401(c)) and section 462, which provides for an appeal to the DOI from a decision by a rating organization rejecting a request for relief from "any person aggrieved by the application of its rating system (*Id.* at § 462).

*CAT Express*, 2019 IL App (1st) 181851, ¶ 10. Liberty Mutual agreed that the DOI's and the Director's authority was derived from section 401(c) of the Code as is noted in the Director's notice of hearing, and that section 462 was inapplicable to the outcome of the case. *Id.* at ¶ 11.

¶ 50 CAT Express argued that the DOI had concurrent jurisdiction with the Illinois Workers' Compensation Commission (Commission) over its dispute with Liberty Mutual and that under section 462, the NCCI was required to provide an opportunity to be heard. *Id.* at ¶ 12. However, ~~Once~~ the NCCI refused to provide assistance, and informed CAT Express that its recourse was to appeal to the DOI under section 462, which it did. *Id.* Further, CAT Express noted a conflict in the law, to wit: section 462 required that questions regarding the application of workers' compensation rates should be appealed to the DOI, while the NCCI's denial letter stated that the Commission determines whether an individual is an employee for workers' compensation. *Id.*

¶ 51 We disagreed with the parties' consensus that there was implied authority for the DOI to hear the dispute and found that neither section 401(c) nor section 462 applied. *Id.* at ¶13. We found that the DOI and the Director lacked express or implied authority to decide an employment status dispute or to issue a final order on the issue. *Id.*

¶ 52 As we noted in *CAT Express*, because administrative agencies are creatures of statute, they have no general or common law powers. *Goral v. Dart*, 2020 IL 125085, ¶ 33. The DOI, as an administrative agency, is limited to the powers granted to it by the legislature, and any actions taken must be authorized by its enabling statute. *Id.*; *Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 14. The agency is limited to those powers granted to it by the legislature in its enabling statute. *Julie Q. v. Department of Children and Family Services*, 2013

IL 113783, ¶ 24. The scope of powers conferred on an administrative agency by its enabling authority is a question of statutory authority which we review *de novo*. *Id.* at ¶ *20*.

¶ 53    We found that the dispute between CAT Express and Liberty Mutual was essentially an employment status dispute:  whether owner-operators used by CAT Express were independent contractors or employees for the purposes of coverage under Liberty Mutual's workers' compensation policy. *CAT Express*, 2019 IL App (1st) 181851, ¶ 16. We concluded that nothing in the Code conferred express authority on the DOI to resolve such disputes and looked to the express provisions of the Code to decide if such authority was implied. *Id.*

¶ 54    We determined that the DOI lacked authority under section 401(c) of the Code and examined its provisions.  Section 401 charges the Director with the rights, powers, and duties pertaining to the enforcement and execution of all the insurance laws of the state.  215 ILCS 5/401 (West 2018).  Specifically, the Director has the power to: (a) make reasonable rules and regulations as may be necessary for making effective such laws; (b) conduct such investigations as may be necessary to determine whether any person has violated any provision of such insurance laws; (c) to conduct such examinations, investigations and hearings in addition to those specifically provided for, as may be necessary to administer the insurance laws; and (d) institute such actions or other lawful proceedings as may be necessary to enforce the Code or any order or action taken by him under the Code. 215 ILCS 5/401(a)-(d) (West 2018).

¶ 55    We made specific note that the parties "made no effort to describe, and [did] not explain how an employment status and premium dispute between an insurer and an insured involved 'the efficient administration of the insurance laws of this State' or whether the determination that someone is an employee for the purposes of workers' compensation insurance coverage is

regulated by the Insurance Code or by any regulation promulgated by the Director." *CAT Express*, 2019 IL App (1st) 181851, ¶ 20. We concluded that the language of section 401(c), although broad, did not vest the Director with express or implied authority to make factual determinations regarding the scope of coverage under any contract of insurance. *Id*. at ¶ 23. The DOI and the Director administer the insurance laws of this state and not individual insurance contracts between an insurer and an insured. *Id.*

¶ 56    We also concluded that section 462 was inapplicable as it did not provide implied authority for the DOI to hear an employment dispute between Liberty Mutual and CAT Express because the dispute did not involve the application of the NCCI's rating system. *Id*. at ¶ 25. In examining section 462, we determined that it required a rating agency, like the NCCI, to provide insureds, such as CAT Express, with information regarding any NCCI rate affecting an insured. *Id.* at ¶ 27. We found that section 462 limits the DOI's review to the final decision of the NCCI involving the interpretation or application of its experience rating plans, its classification system, or its manual rules, and noted that the NCCI expressly stated that it lacked jurisdiction because it does not act to decide employment status disputes. *Id.* at ¶ 31.

¶ 57    In finding that the DOI lacked implied authority, we noted that the parties were not left without a remedy, stating that employer-employee relationships are frequently decided in declaratory judgment actions filed in the circuit court, as well as scope of coverage actions *Id.* at ¶ 34. We concluded that the DOI acted without authority when it issued its final order and therefore, the final order was void. *Id. ¶* 35. We vacated the DOI's final order and the circuit court's order that affirmed said order. *Id.*

¶ 58     The same result is warranted here. Despite Liberty Mutual's attempt to distinguish this case from *CAT Express*, we find that case to be dispositive of the present case. Here, the underlying dispute between Prate and Liberty Mutual was an employment status dispute: namely, whether Prate's subcontractor ARW LLC, who had no workers' compensation coverage, had employees that would trigger additional premiums under Prate's policy. We specifically reject Liberty Mutual's characterization of the issue in this case as simply an analysis of the NCCI's Basic Manual Rule 2-H, i.e., whether Prate furnished satisfactory evidence that the subcontractor had workers' compensation insurance in force.  While it may be true that the final determination of how much additional premium is due would be calculated according to that rule, in order to reach that determination, there must be findings of fact and conclusions of law made to establish ARW LLC's status as an employer and if so, whether any of its employees completed work on Prate's projects. As we concluded in *CAT Express*, such determinations require the DOI and the Director to make factual findings regarding the parties' private interests in the scope of their insurance contract.  No public interest or administration of any insurance law or regulation is implicated by the dispute at bar.  As such, pursuant to sections 5/401(a)-(d) of the Act (215 ILCS 5/401(a)-(d) West 2018)), we conclude that the DOI and the Director were without express or implied authority to issue the final order, and that such order is void. Hence, we hereby vacate the DOI's final order and vacate the circuit court's order affirming the DOI's final order.

¶ 59     As noted by this court in *CAT Express*, Prate is not without remedy to have its issue addressed.  A declaratory judgment action is the proper vehicle for resolution of the factual question raised, namely whether Prate's subcontractor, ARW LLC, which did not have workers' compensation insurance, had employees that worked on Prate's projects that trigged additional

premiums due under the Prate's policy with Liberty Mutual. *CAT Express*, 2019 IL App (1st) 181851, ¶ 34. See also *Brandt Construction Co. v. Ludwig,* 376 Ill. App. 3d 94, 104 (2007) (declaratory judgment action proper where an aggrieved party seeks judicial review of an administrative decision without complying with the exhaustion of remedies doctrine where the agency cannot provide an adequate remedy).

¶ 60                    C. The Circuit Court's Dismissal Order of August 12, 2018

¶ 61    Additionally, Prate seeks review of the circuit court's dismissal order entered on August 12, 2018. As noted earlier, the DOI sought, and the circuit court granted, dismissal of Hearing Officer Riley as an unnecessary party to the action and dismissal of the declaratory judgment count for lack of subject matter jurisdiction.

¶ 62    As discussed earlier, we will treat the DOI's motion to dismiss as a properly labeled section 2-619 (735 ILCS 5/2-619 (West 2018)) motion to dismiss. A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative matter to defeat the claim. 735 ILCS 5/2-619 (West 2018). Our review of the grant of a motion to dismiss under section 2-619 is *de novo*. *Krilich v. American National Bank and Trust Co. of Chicago*, 334 Ill. App. 3d 563, 570 (2002). The question on appeal is whether the existence of a genuine issue of material fact that should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Id.*

¶ 63    Upon review of the record, we find no genuine issue of material fact that should have precluded the dismissal of Hearing Officer Riley as an unnecessary party in the administrative review action (count I). An employee, agent, or member of an administrative entity is not a party of record if he does not have statutory authority to make a decision adverse to the plaintiff. *Fayhee*

*v. State Board of Elections*, 295 Ill. App. 3d 392, 403 (1998). In this case, Hearing Office Riley made a recommendation but did not have authority to issue the order. We thus conclude that the circuit court properly granted the dismissal of Hearing Officer Riley as a party.

¶ 64    The circuit court also granted the DOI's motion to dismiss Prate's declaratory judgment action (count II) for lack of subject matter jurisdiction. As a general rule, arguments, issues, and defenses not presented in an administrative hearing are procedurally defaulted and may not be raised for the first time before the circuit court on administrative review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). That is not the case here as Prate did raise the issue of Liberty Mutual's calculation of the specific premium due before the DOI.

¶ 65    However, the DOI concluded that it was unable to determine the specific amount of premium due. Such conclusion was correct as the Code does not grant the DOI specific or implied powers to resolve insurance contract fee disputes. See *CAT Express*, 2019 IL App (1st) 181851, ¶ 34. The authority of an administrative agency must derive either from the express language of the enabling act or by fair implication and intention from the express provisions of the act as an incident to achieving the objectives for which the agency was created. *My Baps Construction Corp. v. City of Chicago*, 2017 IL App (1st) 161020, ¶ 67.

¶ 66    Where the DOI lacked subject matter authority over Prate's issue related to the specific amount of premium due, it follows that the circuit court lacked authority to hear such matter as part of administrative review. See *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 206 (2008) (claims that are beyond the scope of the hearing officer and beyond the scope of the

administrative agency are therefore beyond the scope of the administrative review law). When an administrative agency is unable to provide a remedy, a party can seek judicial review of such issue in a separate declaratory judgment action. See *Brandt Construction,* 376 Ill. App. 3d at 104.

¶ 67    In this case, however, Prate did not file a separate declaratory judgment action, but instead included this issue as count II of its administrative review complaint. This was improper as such count was beyond the scope of the administrative review law. Accordingly, Prate must file such claim in a separate judicial proceeding. The motion to dismiss was properly granted for lack of subject matter jurisdiction by the circuit court.

¶ 68                                 CONCLUSION

¶ 69    In conclusion, we find that: (1) we have jurisdiction to hear this appeal as the nonfinal dismissal order became final and appealable once the final order was entered by the circuit court; (2) the DOI lacked statutory authority, to determine factual issues regarding additional premiums due under a workers' compensation policy, pursuant to our decision in *CAT Express*, 2019 IL App (1st) 181851; and (3) the circuit court properly granted the DOI's motion to dismiss based on affirmative matters that defeated Prate's claims.

¶ 70    For the foregoing reasons, we vacate the final order of the DOI in favor of Liberty Mutual, as it lacked authority to resolve the parties' dispute. We further vacate the circuit court of Cook County's order affirming the DOI's final order, as such order was void.

¶ 71    Circuit court judgment vacated.

¶ 72    Department order vacated.