# Illinois Official Reports

## Appellate Court

---

### *CAT Express, Inc. v. Muriel*, 2019 IL App (1st) 181851

---

| | |
|---|---|
| Appellate Court Caption | CAT EXPRESS, INC., Plaintiff-Appellant, v. ROBERT H. MURIEL, in His Official Capacity as Director of Insurance; LIBERTY MUTUAL INSURANCE COMPANY; and THE DEPARTMENT OF INSURANCE, Defendants-Appellees. |
| District & No. | First District, First Division<br>No. 1-18-1851 |
| Filed | December 16, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-CH-13404; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Circuit court judgment vacated.<br>Department order vacated. |
| Counsel on Appeal | Matthew P. Barrette and Ryan A. Mahoney, of Blitch Westley Barrette, S.C., of Oak Brook, for appellant.<br><br>James T. Barnes and John C. Schmadeke, of Barnes, P.C., of Chicago, for appellee Liberty Mutual Insurance Company.<br><br>Kwame Raoul, Attorney General, of Chicago (Mary C. Labrec, Assistant Attorney General, of counsel), for other appellees. |

Panel          JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Hyman and Walker concurred in the judgment and opinion.

## OPINION

¶ 1       This case involves an employment status dispute between plaintiff, CAT Express, Inc. (CAT), a trucking company, and defendant, Liberty Mutual Insurance Company (Liberty). CAT applied to the Illinois Assigned Risk Plan (Plan) for workers' compensation insurance coverage, and coverage was randomly assigned to Liberty. CAT disclosed six clerical workers subject to workers' compensation coverage. After a premiums audit, Liberty determined that CAT employed a substantial number of owner-operators that CAT did not disclose as employees and, consequently, CAT owed $356,592 in additional premiums to cover the exposure related to the owner-operators. CAT disagreed, contending that its contracts with the owner-operators established an independent contractor relationship and not an employer-employee relationship. As a result, CAT requested that the National Council on Compensation Insurance (NCCI) resolve the question of whether the owner-operators were independent contractors or employees who were covered under the policy. The NCCI determined that it had no jurisdiction over the dispute and advised CAT to appeal to the Department of Insurance (Department). After a hearing, defendant Robert H. Muriel,[1] in his capacity as the Director of Insurance (Director), adopted the hearing officer's findings of fact, conclusions, and recommendation that Liberty correctly determined that CAT's "owner-operators" were employees rather than independent contractors and found CAT liable for the additional premiums. CAT's motion for reconsideration was denied, and on administrative review, the circuit court of Cook County affirmed the Department's order. CAT timely filed this appeal.

¶ 2       After the parties submitted their appellate briefs, we ordered supplemental briefing on the issue of whether the Department and the Director had authority to resolve the parties' dispute. We find that the Department did not have express or implied statutory authority to resolve this employment status dispute. The determination of whether the owner-operators were employees or independent contractors of CAT for purposes of calculating workers' compensation insurance premiums does not directly or indirectly involve the Department's or the Director's authority to administer the insurance laws of this state. Therefore, the Department acted beyond its authority in conducting the hearing and issuing the final order. We therefore vacate the circuit court's judgment affirming the Director's final order and vacate the Director's final order.

¶ 3                                 I. BACKGROUND
¶ 4       CAT is a trucking company that matches freight with truck drivers available to transport the freight. In 2015, CAT applied for workers' compensation insurance through the Plan administered by the NCCI. CAT's insurance application identified six clerical employees and did not disclose any truck drivers or any other employees to be insured under the policy. The

---

[1]At the time of the Director's final order, the Director was Jennifer Hammer, who was initially named as an appellee in this case. She has been succeeded in that position by Robert H. Muriel. We have amended the caption of this appeal to reflect the proper party.

Plan bound coverage and randomly assigned Liberty as CAT's workers' compensation carrier. Liberty issued an insurance policy effective November 7, 2015, with an estimated annual premium—which was subject to a final premium calculation—of $1284. In February 2016, Liberty conducted a premiums audit and determined that CAT contracted with numerous owner-operators, creating a policy exposure because they were employees of CAT. Liberty issued an endorsement demanding an additional annual premium of $356,592 to cover the owner-operators. CAT cancelled the policy, and Liberty adjusted the premium owed to $150,000.

¶ 5 CAT sought a determination from the NCCI as to the employment status of the owner-operators. The NCCI refused to resolve the dispute and sent a letter to CAT stating,

> "The types of grievances that are under the jurisdiction of the NCCI/the [Illinois Workers' Compensation Appeals Board] are limited to those relating to the interpretation or application of the following NCCI rules:
> 1) Experience Rating Plan,
> 2) Classification system, and
> 3) Manual Rules.
>
> Coverage or employment status disputes require an interpretation of the state or federal law and cannot be resolved by interpretation or application of NCCI rules."

In its letter, the NCCI also informed CAT that it could appeal the NCCI's determination to the Department under section 462 of the Illinois Insurance Code (215 ILCS 5/462 (West 2016)).

¶ 6 As directed, CAT requested a hearing before the Director. The Director assigned a hearing officer who heard testimony from three witnesses and accepted numerous exhibits into evidence. The hearing officer issued written findings of fact, conclusions, and recommendations, finding that the owner-operators were CAT's employees, not independent contractors, for purposes of workers' compensation insurance coverage and that CAT was liable to Liberty for additional premiums.

¶ 7 The Director adopted the hearing officer's findings of fact, conclusions, and recommendations. The Director ordered that Liberty was entitled to the disputed premium charges. CAT exhausted its administrative remedies and filed a petition for administrative review in the circuit court. The circuit court affirmed the Department's order. CAT filed a timely notice of appeal.

¶ 8                                    II. ANALYSIS

¶ 9 CAT's appeal centers on the question of whether the Director was correct in deciding that the owner-operators CAT contracted with to deliver third-party freight were employees of CAT and were not independent contractors. In their respective briefs on the merits, neither the parties, the Department, nor the Director raised any issue regarding the Department's or the Director's authority to determine the employment status of workers involved in CAT's business. After the parties briefed the merits of CAT's appeal, we ordered the parties to file supplemental briefs addressing the Department's authority to decide an employment status dispute and to specifically address the applicability of section 462 of the Insurance Code (*id.*), identified by the NCCI in its rejection letter to CAT as the basis for an appeal of its decision to the Department. The parties filed their supplemental briefs on the issue.

¶ 10  The parties, the Department, and the Director acknowledge that the Department does not have express authority to adjudicate employment status disputes under the Insurance Code. The Department and the Director, however, take the position that the Department has implied authority to adjudicate employment status disputes under sections 401, 402, 403, and 462 of the Insurance Code. *Id.* §§ 401, 402, 403, 462. This implied authority, they contend, derives from section 401(c) of the Insurance Code, which expressly allows the Director to conduct hearings "as may be necessary and proper for the efficient administration of the insurance laws of this State" (*id.* § 401(c)), and section 462 of the Insurance Code, which provides for an appeal to the Department from a decision by a rating organization rejecting a request for relief from "any person aggrieved by the application of its rating system" (*id.* § 462).

¶ 11  Liberty also argues that the Department's and the Director's authority to resolve employment status disputes between insurers and insureds is derived from section 401(c) of the Insurance Code. It contends that the Director's notice of hearing in this matter stated, "The purpose of this proceeding is to provide the parties hereto an opportunity to appear and present evidence regarding the allegation by [CAT] that it has been aggrieved by the action of Liberty *** in applying a workers' compensation system to the business activities of [CAT]." Liberty argues that section 462 "has no applicability to the outcome of this case" and that the Department treated CAT's letter requesting assistance as a "fresh complaint."

¶ 12  CAT argues that the Department has concurrent jurisdiction with the Illinois Workers' Compensation Commission over CAT's dispute with Liberty. CAT argues that under section 462 of the Insurance Code, the "NCCI was required to provide to persons aggrieved by the application of NCCI's workers['] compensation rating system an opportunity to be heard on their written request to review the manner in which the workers['] compensation rating system had been applied," and that the NCCI, upon its refusal to provide assistance, informed CAT that its recourse was to appeal to the Department under section 462 of the Insurance Code, which it did. CAT also identifies what it describes as "an inherent conflict" in the law, noting that section 462 "requires questions of the application of workers compensation rates to be appealed to the [Department]" (see *id.*), while the NCCI's denial letter to CAT stated that the issue of whether an individual is an employee for workers' compensation purposes is a decision made by the Workers' Compensation Commission.

¶ 13  We do not agree with the parties' loose consensus that there is implied authority for the Department and the Director to hear this dispute. We disagree with Liberty, the Department, and the Director that section 401(c) provides the Department or Director with implied authority to hear this employment status dispute, and we agree with Liberty that section 462 of the Insurance Code does not apply here. We find that the Department and the Director lacked express or implied statutory authority to decide an employment status dispute or to issue a final order on the issue.

¶ 14                                    A. General Provisions

¶ 15  The Department, as an administrative agency, "is limited to the powers granted to it by the legislature, and any actions it takes must be authorized by statute." *Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 14 (citing *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 186 (2003)). As our supreme court has explained,

> "[A]dministrative bodies *** are creatures of statute and possess no general or common law powers. Any power or authority claimed by an administrative agency

must find its source within the provisions of the statute by which the agency was created. The agency's authority must either arise from the express language of the statute or 'devolve by fair implication and intendment from the express provisions of the [statute] as an incident to achieving the objectives for which the [agency] was created.' " *Vuagniaux*, 208 Ill. 2d at 187-88 (quoting *Schalz v. McHenry County Sheriff's Department Merit Comm'n*, 113 Ill. 2d 198, 202-03 (1986)).

¶ 16 The dispute between CAT and Liberty is essentially an employment status dispute: whether owner-operators used by CAT were independent contractors or employees of CAT for the purposes of coverage under Liberty's workers' compensation policy. Nothing in the Insurance Code confers express authority on the Department to resolve employment status disputes between insurers and insureds. We therefore look to the express provisions of the Insurance Code to decide whether the legislature, by fair implication and intendment, has vested the Department and the Director with authority to determine a worker's employment status for the purposes of calculating workers' compensation insurance premiums and the corresponding authority to find liability for allegedly unpaid premiums as an incident to achieving the objectives for which the Department was created.

¶ 17 B. The Department Lacked Authority Under
Section 401(c) of the Insurance Code

¶ 18 Section 401 of the Insurance Code provides that "[t]he Director is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State." 215 ILCS 5/401 (West 2016). Specifically, the Director has the power

"(a) to make reasonable rules and regulations as may be necessary for making effective such laws;

(b) to conduct such investigations as may be necessary to determine whether any person has violated any provision of such insurance laws;

(c) to conduct such examinations, investigations and hearings in addition to those specifically provided for, as may be necessary and proper for the efficient administration of the insurance laws of this State; and

(d) to institute such actions or other lawful proceedings as he may deem necessary for the enforcement of the Illinois Insurance Code or of any Order or action made or taken by him under this Code. The Attorney General, upon request of the Director, may proceed in the courts of this State to enforce an Order or decision in any court proceeding or in any administrative proceeding before the Director." *Id.* § 401(a)-(d).

¶ 19 Section 402 of the Insurance Code gives the Director or his appointee the authority to personally conduct "[a]ll examinations, investigations and hearings provided for by this Code." *Id.* § 402(1). Section 403 gives the Director the power to subpoena and examine witness "[i]n the conduct of any examination, investigation or hearing provided for by [the Insurance] Code." *Id.* § 403(1). Thus, sections 401, 402, and 403 generally give the Department and the Director broad authority to make rules and regulations to effectuate insurance laws, to conduct hearings and investigations to identify violations to properly effectuate the administration of Illinois insurance laws, and to institute enforcement actions of the Insurance Code or orders issued under the Insurance Code.

¶ 20 We reject the parties' arguments that section 401(c) of the Insurance Code impliedly operates as a basis for the Department's authority in this matter. The language of section 401(c) is broad and authorizes the Director "to conduct such examinations, investigations and hearings in addition to those specifically provided for, as may be necessary and proper for the efficient administration of the insurance laws of this State." *Id.* § 401(c). But despite its breadth, the parties here make no effort to describe, and do not explain, how an employment status and premium dispute between an insurer and an insured involves "the efficient administration of the insurance laws of this State" or whether the determination that someone is an employee for the purposes of workers' compensation insurance coverage is regulated by the Insurance Code or by any regulation promulgated by the Director.

¶ 21 " 'The stated purpose of the Insurance Code is to protect the public interest in the area of for-profit insurance.' " *Walsh v. Department of Insurance*, 2016 IL App (1st) 150439, ¶ 25 (quoting *Coronet Insurance Co. v. Washburn*, 201 Ill. App. 3d 633, 639 (1990)). The Department's stated mission is "To protect consumers by providing assistance and information, by efficiently regulating the insurance industry's market behavior and financial solvency, and by fostering a competitive insurance marketplace." *About the Illinois Department of Insurance*, Ill. Dept. of Ins., http://insurance.illinois.gov/main/aboutUs.html (last visited Dec. 11, 2019) [https://perma.cc/2YEA-EYEZ].

¶ 22 Here, the parties and the Director have not provided any argument that the parties' dispute involves any public interest, the administration of any insurance law or regulation, or the efficient regulation of the insurance industry's market behavior or financial solvency. Liberty's determination that CAT owed additional premiums under the policy involves private interests—CAT's interest in paying a correct premium based on the number of its employees, and Liberty's interest in receiving the correct premium for underwriting CAT's risks—and no claim is made that Liberty's audit determination violated any insurance law or regulation. The parties fail to offer any rationale as to why such a dispute falls within the Department's implied authority under section 401(c).

¶ 23 The Insurance Code does not vest the Director with express or implied authority to make factual determinations regarding the scope of coverage under any contract of insurance. The Department and the Director administer the insurance laws of this state, not individual insurance contracts between an insurer and an insured. The Director's express authority under the Insurance Code is extensive and includes approving policy forms and related forms for myriad types of insurance (215 ILCS 5/143 (West 2016)), examining insurance companies (*id.* § 132.3), regulating the issuance and sale of variable contracts (*id.* § 245.24; *Van Dyke v. White*, 2019 IL 121452, ¶ 57), reviewing applications for licensing of insurance producers (215 ILCS 5/500-30 (West 2016)), examining and investigating unfair methods of competition or deceptive acts of practices in the insurance industry (*id.* § 425), and acting as rehabilitator (*id.* § 192) or liquidator (*id.* § 193) for domestic or unauthorized foreign or alien insurance companies.

¶ 24              C. Section 462 of the Insurance Code Is Inapplicable to This Dispute

¶ 25 We also find that section 462 of the Insurance Code does not provide implied authority for the Department to hear the employment status dispute between Liberty and CAT because the dispute did not involve the application of the NCCI's rating system. The NCCI's statement

that CAT could appeal to the Department under section 462 is not the equivalent of a legislative enactment and, in this case, is meaningless.

¶ 26    Section 462 of the Insurance Code provides:

"Every rating organization, and every company which does not adopt the rates of a rating organization, shall, within a reasonable time after receiving written request therefor, furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, in readily understandable language, all pertinent information as to such rate as specified in rules adopted by the Department.

Every rating organization, and every company which does not adopt the rates of a rating organization, shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or company fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or such company on such request may, within thirty days after written notice of such action, appeal to the Director, who, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or company, may affirm or reverse such action." *Id.* § 462.

¶ 27    Thus, section 462 requires a rating agency, like the NCCI, to provide insureds, such as CAT, with information regarding any NCCI rate affecting an insured. If CAT was aggrieved by the NCCI's rating system, CAT could request the NCCI to review the applied rating system under section 462, and if the NCCI review was adverse to CAT, it could then appeal to the Department. Here, CAT was not aggrieved by application of the NCCI rating system; CAT was aggrieved by Liberty's determination as to the number of workers to which the rating system applied when calculating the adjusted premium.

¶ 28    In addition to administering the residual insurance market in Illinois, the NCCI "gathers data, analyzes industry trends, and provides objective insurance rate and loss cost recommendations." Nat'l Council on Compensation Ins., About the NCCI, https://www.ncci. com/Articles/Pages/AU_NCCIFactSheet.pdf (last visited Dec. 11, 2019) [https://perma.cc/ VR8N-QG9T]. The NCCI uses this data and research to develop experience rating plans, classification codes, and various rules that it publishes in its manuals. According to the NCCI:

"Experience rating recognizes the differences among qualifying employers with respect to safety and loss prevention. It does this by comparing the experience of individual employers with the average employer in the same classification. The differences are reflected by an experience rating modification (mod), based on individual payroll and loss records, which may result in an increase, decrease, or no change in premium." Nat'l Council on Compensation Ins., ABCs of Experience Rating, https://www.ncci.com/Articles/Documents/UW_ABC_Exp_Rating.pdf (last visited Dec. 11, 2019) [https://perma.cc/83DF-UH9A].

¶ 29    In other words, the experience rating is a mechanism used to forecast the underwriter's risk that, based on the nature of insured's business, a workers' compensation claim will be filed. The experience rating is used to calculate an appropriate premium. The NCCI's classification system is a set of codes that are used by insurers to classify the business operations of an

employer in order to forecast risk of an injury and to calculate an appropriate premium. The experience rating and classification system considers differences between industries and employee functions—a clerical worker's wages and risk of injury are different than the wages and risks applicable to over-the-road truck drivers or a roofer—and those differences and risks of injury are reflected in the premiums charged. The experience rating and the classification system are then applied to the employer's payroll to calculate the premium required for workers' compensation insurance coverage, *e.g.*, in this case, $1200 per year for six clerical workers or $357,000 for an additional 40 over-the-road truck drivers.

¶ 30    Here, the NCCI randomly assigned Liberty to be CAT's workers' compensation insurance carrier. CAT identified six clerical employees to be covered, and Liberty issued its policy reserving the right to conduct an audit. After a final premiums audit, Liberty concluded that the 40 owner-operators CAT used to deliver third-party freight were CAT's employees covered under the policy, not independent contractors, and therefore CAT owed additional premiums of $357,000. CAT objected and turned to the NCCI to resolve the dispute and to determine whether the owner-operators were CAT's employees.

¶ 31    Section 462 of the Insurance Code vests the Department with specific and limited authority that is not implicated here because CAT never disputed the application of an experience rating plan, a classification system, or any NCCI manual rules. The NCCI itself recognized that it did not have "jurisdiction over this dispute" because "the types of grievances that are under the jurisdiction of the NCCI" are limited to the interpretation or application of its experience rating plans, its classification system, or its manual rules. Section 462 limits the Department's review to the final decision of the NCCI involving only these three areas, and the NCCI expressly stated that it lacked jurisdiction because it does not decide employment status disputes, which do not implicate an "interpretation or application" of its rules.[2]

¶ 32    CAT did not raise any issue with Liberty's application of the NCCI's rating system to CAT's payroll; CAT did not argue that Liberty applied the wrong classification code to CAT's six disclosed clerical workers, that the owner-operators were misclassified, or that the applicable premium was incorrect. The only issue that CAT raised before the NCCI and the Department related to the substantive question of whether the owner-operators were CAT's employees for purposes of workers' compensation insurance coverage. In other words, CAT complained that Liberty erroneously determined that CAT had more employees than CAT claimed.[3] The NCCI refused to get involved because it does not make determinations of who is or is not an employee, and referred CAT to the Department under section 462 of the Insurance Code. There is nothing in the record before us or in the parties' appellate briefs on the merits that suggests that the parties' dispute turns on the application of the NCCI's—or any other rating organizations'—rating system related to CAT's risk and resulting premium. Instead, the parties' dispute turns on whether Liberty correctly determined that the owner-operators were not independent contractors but, rather, that they were CAT's employees.

[2]We note that the NCCI made no reference to the other two areas of its jurisdiction—application of its experience rating or its manual rules—because CAT's grievance did not relate to either of those issues.

[3]We also note that CAT did not claim that Liberty applied the wrong classification code to the truck driver employees that Liberty determined CAT had.

Therefore, section 462 of the Insurance Code is inapplicable to the fundamental question in this case and cannot form the basis of the Department's implied authority to resolve the dispute.

¶ 33    Finally, we disagree with CAT's contention that the Illinois Workers' Compensation Commission has concurrent jurisdiction over the parties' dispute. This dispute does not involve a determination of whether any individual is entitled to workers' compensation benefits or whether CAT is liable for workers' compensation benefits under the Workers' Compensation Act.[4] Instead, this is essentially an insurance coverage or breach of contract dispute that requires a determination of whether Liberty was entitled to additional premiums based on its premium audit finding that the owner-operators were CAT's employees. Such a determination, under the circumstances of this case, does not fall within the Department's express or implied authority, and thus CAT and/or Liberty needed to look elsewhere to resolve this dispute.

¶ 34    We find that the Department lacked implied authority to resolve the employment status dispute between CAT and Liberty. There is no question that the parties are not without a remedy. Employer-employee relationships are frequently decided in declaratory judgment actions filed in the circuit court.[5] See 735 ILCS 5/2-701 (West 2018) ("The [circuit] court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any *** contract or other written instrument, and a declaration of the rights of the parties interested."). The contractual relationship between the insured and the insurer is frequently decided in contract actions involving the scope of coverage (see generally *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992) (discussing insurer's duty to defend and duty to indemnify)) and a failure to pay premiums (see, *e.g.*, *United States Fidelity & Guaranty Co. v. Hollerich & Walgenbach Co.*, 22 Ill. App. 3d 156 (1974) (involving insurer's breach of contract action against insured for failing to pay adjusted postaudit premiums)).

¶ 35    The Department acted without authority when it issued its final order, and therefore its final order is void. We vacate the Department's final order and vacate the circuit court's order affirming the Department's final order on administrative review.

¶ 36                                  III. CONCLUSION

¶ 37    For the foregoing reasons, the Department's final order in favor of Liberty is vacated, as the Department lacked authority to resolve the parties' dispute. Similarly, the judgment of the circuit court of Cook County affirming the Department's order is vacated, as the Department's order was void.

---

[4]If an owner-operator had filed a workers' compensation claim for benefits with the Workers' Compensation Commission under the Workers' Compensation Act, the commission could determine whether the owner-operator was CAT's employee or an independent contractor. *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159, 173 (2007).

[5]We express no opinion as to whether a declaratory judgment action is the only remedy available to CAT, and our statement should not be construed as foreclosing any other legal or equitable remedies to either party.

¶ 38          Circuit court judgment vacated.

¶ 39          Department order vacated.