**2022 IL 127140**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127140)

PRATE ROOFING AND INSTALLATIONS, LLC, Appellee, v. LIBERTY MUTUAL INSURANCE CORPORATION, Appellant.

_Opinion filed May 19, 2022._

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Overstreet, and Carter concurred in the judgment and opinion.

## OPINION

¶ 1 At issue is whether the Department of Insurance (DOI) had the authority to resolve this dispute between Prate Roofing and Installations, LLC (Prate), and Liberty Mutual Insurance Corporation (Liberty) over whether Prate owed additional premiums on its workers' compensation policy. The appellate court held

that under its recent decision in *CAT Express, Inc. v. Muriel*, 2019 IL App (1st) 181851, the Department of Insurance (DOI) did not have the authority to resolve the dispute and thus vacated the DOI's final order and the order of the circuit court affirming it. 2021 IL App (1st) 191842-U. We allowed Liberty's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). For the reasons that follow, we disagree with the appellate court's conclusion and hold that the DOI had the authority to resolve the dispute under section 462 of the Illinois Insurance Code (215 ILCS 5/462 (West 2018)).

¶ 2                                    BACKGROUND

¶ 3        A complete statement of facts may be found in the appellate court's order. 2021 IL App (1st) 191842-U, ¶¶ 5-29. We summarize here only those facts necessary for an understanding of the sole issue that we address.

¶ 4        Plaintiff, Prate Roofing and Installations, LLC, is a roofing and construction installations contractor. In 2013, Prate sought workers' compensation coverage through the Illinois Assigned Risk Plan, which provides workers' compensation insurance coverage through a risk pool administered by the National Council on Compensation Insurance (NCCI). Liberty was assigned as Prate's carrier. Prate renewed the policy from October 2014 to June 2015. During that period Liberty audited Prate's records and determined that one of Prate's subcontractors, ARW Roofing, LLC (ARW), did not have workers' compensation insurance. Liberty determined that the omission had exposed it to more liability than it had bargained for and assessed Prate an additional premium of $127,305.

¶ 5        Prate filed an appeal with the Illinois Workers' Compensation Appeals Board (Board), which provides dispute resolution services for the NCCI. The Board later informed the parties by letter that it did not have sufficient information to resolve the dispute. Specifically, the Board explained that it had not been given copies of the relevant policy forms and could not confirm or deny whether coverage existed for ARW during the policy period. The Board could also not determine whether ARW was "an LLC or an Inc." when work was performed and whether that had a bearing on the dispute. The Board suggested that Prate refile its dispute with the DOI along with a copy of the letter explaining why the Board declined to rule.

¶ 6    Prate then appealed to the DOI under section 462 of the Insurance Code. The parties waived their right to an in-person hearing and requested that the issues be determined by written submissions and exhibits. Liberty argued that it was entitled to the additional premium because Prate had been making payments to an uninsured subcontractor, ARW. Liberty explained that Prate had a certificate of insurance for another subcontractor, Reliable Trade Services, Inc. (RTS), but that certificate did not cover ARW. Because ARW was an uninsured subcontractor, it created a potential exposure for Liberty, entitling Liberty to an additional premium. Liberty cited Section C.2. of its policy with Prate, which provided:

> "All other persons engaged in work that could make us liable under Part One Workers Compensation Insurance of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations."

Liberty also relied on (1) section 1(a)(3) of the Workers' Compensation Act (820 ILCS 305/1(a)(3) (West 2018)), which provides that employers who engage a subcontractor are

> "liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor has insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this Act, or guaranteed his liability to pay such compensation"

and (2) rule 2-H of the basic manual of the Illinois Assigned Risk Plan, which states that, "For each subcontractor not providing such evidence of workers compensation insurance, additional premium must be charged on the contractor's policy for the uninsured subcontractor's employees according to Subcontractor Table 1 and 2 below." Prate had argued that all the payments it made to ARW were passed through to RTS, but Liberty contended that it was impossible to verify this. Liberty also pointed out that payments were being made to both entities throughout the policy period.

¶ 7        Liberty explained in an exhibit that it had calculated the additional premium using the default method provided in manual rule 2-H, tables 1 and 2, as Prate had failed to provide "any invoices to allow [Liberty] to determine the jobs involved, cost breakdowns, or the timeframe for the jobs in which payment is in question." Accordingly, Liberty assessed the additional premium as 90% of the total paid to ARW. This is the amount specified for situations where a subcontractor fails to furnish adequate documentation and the job involves "labor only."

¶ 8        Prate's position was that Liberty had failed to establish that Prate was bound by the NCCI basic manual or subject to an additional premium for uninsured subcontractors. Assuming arguendo that Prate was subject to the terms of the manual, Prate argued that no additional premium was warranted because ARW did not have any employees. Prate noted that NCCI manual rule 2-H refers to "employees of uninsured subcontractors" and the "uninsured subcontractor's employees." Prate explained that all work on Prate projects was performed by employees of RTS and that RTS had workers' compensation insurance during the relevant time period. Thus, Liberty was not entitled to an additional premium because it had not assumed any risk for workers' compensation claims involving ARW. Alternatively, Prate claimed that the amount of the additional premium should be only $20,304.52, as Prate had provided evidence that the actual cost of labor for ARW jobs was $44,140.25. Prate contended that this amount should have been multiplied by the workers' compensation premium rate of $46/100, for a maximum audit premium of $20,304.52.

¶ 9        The DOI's hearing officer issued his findings of fact and conclusions of law, agreeing with Liberty on all of the issues. First, the hearing officer concluded that ARW did not have a workers' compensation insurance policy of its own during the relevant period. Moreover, he concluded that the RTS policy did not provide coverage to ARW. Second, the hearing officer concluded that ARW had employees during the relevant policy period. Key to this determination was an admission by Prate's president that RTS and ARW would complete contracts for one another. The hearing officer did not see how ARW could complete projects for RTS without employees of its own. Moreover, documents that listed RTS at the top appeared to be proofs of payment by RTS to ARW for workers' compensation payroll during the relevant period. Third, the hearing officer determined that the arrangement between Prate and ARW exposed Liberty to workers' compensation liability. The

- 4 -

hearing officer noted that under Illinois law Prate was liable to pay compensation to the employees of subcontractors, unless the subcontractors had their own workers' compensation insurance. See 820 ILCS 305/1(a)(3) (West 2018). Thus, the hearing officer's determination that ARW had employees but did not have its own workers' compensation policy meant that Liberty was exposed under Prate's policy to workers' compensation liability from ARW's employees. Finally, the hearing officer determined that Liberty applied the proper standards in computing the increase in premiums. The hearing officer noted that Prate disputed that it was bound by NCCI manual rule 2-H. However, the binder of coverage issued to Prate stated that coverage would be "afforded under the applicable Workers Compensation Insurance Plan developed or administered by NCCI." Accordingly, the hearing officer concluded that Prate had contractually consented to specific rules of the NCCI. The hearing officer found that both under the terms of the policy and basic manual rule 2-H, Liberty was permitted to use the contract price as the basis for determining the premium. Accordingly, "Liberty Mutual properly applied the NCCI Basic Manual's rule to use at least 90% of the $300,673.56 in total contract payments from Prate Roofing to ARW LLC as the basis for calculating the additional premium owed by Prate Roofing for workers compensation liability from ARW LLC employees." The hearing officer thus upheld "Liberty Mutual's application of its rating system to the policy at issue."

¶ 10     The Director of Insurance entered an order adopting the hearing officer's findings of fact and conclusions of law as her own. Prate moved for rehearing, asserting that the hearing officer had overlooked evidence that (1) Prate's use of ARW did not expose Liberty to workers' compensation liability and (2) the total amount of labor provided on Prate projects was only $44,140.25, which meant that any additional premium would only have been $20,304.52. The Director concluded that Liberty had failed to show a good cause basis for rehearing and thus denied the motion.

¶ 11     On administrative review, the Cook County circuit court affirmed the DOI's decision. The court explained in open court that it found that the factual finding that ARW did not have employees was not against the manifest weight of the evidence. The court believed that there were two mixed questions of law and fact: whether Liberty had been exposed to additional liability and whether the calculation of the

additional premium was erroneous. The court found that the DOI's resolution of these issues was not clearly erroneous. Prate then appealed.

¶ 12    While the case was pending in the Appellate Court, First District, that same district of the appellate court issued its ruling in *CAT Express*, 2019 IL App (1st) 181851. That case involved a dispute between Liberty and a different trucking company, CAT Express, Inc. (CAT). CAT applied for workers' compensation coverage with the Illinois Assigned Risk Plan. *Id.* ¶ 1. Liberty was assigned as CAT's carrier. *Id.* CAT disclosed six clerical workers subject to workers' compensation coverage. *Id.* Following a premium audit, Liberty determined that CAT had failed to include as employees a large number of owner-operators. *Id.* Accordingly, Liberty determined that CAT owed an additional premium of $356,592. *Id.* CAT's position was that the owner-operators were independent contractors and thus did not need to be disclosed. *Id.* CAT then requested that the NCCI resolve whether the owner-operators were employees or independent contractors. *Id.* The NCCI determined that it had no authority to resolve the dispute, explaining in a letter:

> " 'The types of grievances that are under the jurisdiction of the NCCI/the [Illinois Workers' Compensation Appeals Board] are limited to those relating to the interpretation or application of the following NCCI rules:
>
> 1) Experience Rating Plan,
>
> 2) Classification system, and
>
> 3) Manual Rules.
>
> Coverage or employment status disputes require an interpretation of the state or federal law and cannot be resolved by interpretation or application of NCCI rules.' " *Id.* ¶ 5.

The NCCI informed CAT that it could appeal to the DOI under section 462 of the Insurance Code (215 ILCS 5/462 (West 2016)). *CAT Express*, 2019 IL App (1st) 181851, ¶ 5.[1]

¶ 13    CAT appealed to the DOI. Following a hearing, the hearing officer determined that the owner-operators were CAT employees and therefore CAT owed the additional premium. *Id.* ¶ 6. The Director adopted the hearing officer's decision. *Id.* ¶ 7. CAT appealed to the circuit court, and the circuit court affirmed. *Id.*

¶ 14    CAT then appealed to the appellate court, and the court ordered supplemental briefing on the question of whether the DOI had the authority to resolve an employment status dispute. *Id.* ¶ 9. The DOI and the Director argued that the DOI had implied authority under sections 401, 402, 403, and 462 of the Insurance Code (see 215 ILCS 5/401, 402, 403, 462 (West 2016)). *CAT Express*, 2019 IL App (1st) 181851, ¶ 10. The DOI contended that the implied authority derived from section 401(c), which allows the Director to conduct hearings " 'as may be necessary and proper for the efficient administration of the insurance laws of this State' " (*id.* (quoting 215 ILCS 5/401(c) (West 2016))), and section 462, which provides for an appeal to the DOI from a rating organization decision rejecting a request for relief from " 'any person aggrieved by the application of its rating system' " (*id.* (quoting 215 ILCS 5/462 (West 2016))). Liberty contended that the DOI's authority to resolve employment status disputes was derived from section 401(c). *Id.* ¶ 11. Liberty argued that section 462 was not implicated in that case because the DOI had treated CAT's letter requesting assistance as a " 'fresh complaint.' " *Id.* By contrast, CAT argued that the DOI's authority to resolve the dispute was provided by section 462 and that its jurisdiction was concurrent with the Illinois Workers' Compensation Commission. *Id.* ¶ 12. CAT noted that under section 462, the NCCI was required to provide persons aggrieved by the application of its rating system an opportunity to be heard on the person's written request to review the manner in which the rating system had been applied. *Id.* When the NCCI refused to resolve the dispute, it informed CAT that its recourse was to appeal to the DOI under section 462. *Id.*

---

[1]Section 462 allows an appeal to the DOI when a decision of the rating organization is adverse to the party or when the rating organization fails to act on the party's request for review within 30 days of when it was made. 215 ILCS 5/462 (West 2018).

¶ 15    The appellate court rejected all of these positions. The court reiterated that what was at issue was an employment status dispute: whether owner-operators used by CAT were independent contractors or employees of CAT for purposes of coverage under Liberty's workers' compensation policy. *Id.* ¶ 16. The court noted that nothing in the Insurance Code provided express authority for the DOI to resolve employment status disputes between insurers and insureds. *Id.* The court thus took up the question of whether the legislature had provided the DOI such authority by "fair implication and intendment." *Id.*

¶ 16    The court first held that implied authority did not exist under section 401(c). The court explained that, taken together, sections 401, 402, and 403

> "generally give the Department and the Director broad authority to make rules and regulations to effectuate insurance laws, to conduct hearings and investigations to identify violations to properly effectuate the administration of Illinois insurance laws, and to institute enforcement actions of the Insurance Code or orders issued under the Insurance Code." *Id.* ¶ 19.

The court acknowledged that the DOI's authority under section 401(c) was broad but explained that a premium dispute between an insurer and insured did not involve the " 'efficient administration of the insurance laws of this State.' " *Id.* ¶ 20 (quoting 215 ILCS 5/401(c) (West 2016)). The parties had not explained to the court's satisfaction how the dispute involved "any public interest, the administration of any insurance law or regulation, or the efficient regulation of the insurance industry's market behavior or financial solvency." *Id.* ¶ 22. Rather, the case was a premium dispute between an insurance company and insured that implicated only private interests. *Id.* The court did not believe that the DOI had express or implied authority to determine the scope of coverage under a contract of insurance because the DOI administers the insurance laws of the state, not individual insurance contracts. *Id.* ¶ 23.

¶ 17    The court then took up the question of whether section 462 provided the DOI with authority to resolve an employment status dispute. The court acknowledged that this section allows a party aggrieved by the application of a rating organization's rating system to request a review with the rating organization and then appeal to the DOI if the decision is adverse to the party. *Id.* ¶ 27. The court concluded, nevertheless, that "CAT was not aggrieved by application of the NCCI

- 8 -

rating system; CAT was aggrieved by Liberty's determination as to the number of workers to which the rating system applied when calculating the adjusted premium." *Id.* The court then explained what types of questions the DOI may consider under section 462 and why that case did not fall within any of those categories:

"Section 462 of the Insurance Code vests the Department with specific and limited authority that is not implicated here because CAT never disputed the application of an experience rating plan, a classification system, or any NCCI manual rules. The NCCI itself recognized that it did not have 'jurisdiction over this dispute' because 'the types of grievances that are under the jurisdiction of the NCCI' are limited to the interpretation or application of its experience rating plans, its classification system, or its manual rules. Section 462 limits the Department's review to the final decision of the NCCI involving only these three areas,[2] and the NCCI expressly stated that it lacked jurisdiction because it does not decide employment status disputes, which do not implicate an 'interpretation or application' of its rules.

CAT did not raise any issue with Liberty's application of the NCCI's rating system to CAT's payroll; CAT did not argue that Liberty applied the wrong classification code to CAT's six disclosed clerical workers, that the owner-operators were misclassified, or that the applicable premium was incorrect. The only issue that CAT raised before the NCCI and the Department related to the substantive question of whether the owner-operators were CAT's employees for purposes of workers' compensation insurance coverage. In other words, CAT complained that Liberty erroneously determined that CAT had more employees than CAT claimed. The NCCI refused to get involved because it does not make determinations of who is or is not an employee, and referred CAT to the [DOI] under section 462 of the Insurance Code. There is nothing in the record before us or in the parties' appellate briefs on the merits that suggests that the parties' dispute turns on the application of the NCCI's—or any other rating organizations'—rating system related to CAT's risk and resulting premium. Instead, the parties' dispute turns on whether Liberty correctly

---

[2]This description is not entirely accurate. Section 462 does not limit the DOI to reviewing final decisions of the NCCI. A party is also entitled to seek review with the DOI if the NCCI fails to grant or reject the party's request for review within 30 days. See 215 ILCS 5/462 (West 2018).

determined that the owner-operators were not independent contractors but, rather, that they were CAT's employees. Therefore, section 462 of the Insurance Code is inapplicable to the fundamental question in this case and cannot form the basis of the Department's implied authority to resolve the dispute." *Id.* ¶¶ 31-32.

The court thus vacated the DOI's order as void and also vacated the circuit court's order affirming it. The court explained, however, that the parties were not without a remedy, as employer-employee relationships are frequently decided in declaratory judgment actions filed in the circuit court. *Id.* ¶¶ 34-35.

¶ 18        In the present case, the appellate court determined that *CAT Express* was "dispositive of the merits of this appeal." 2021 IL App (1st) 191842-U, ¶ 47. The court explained as follows:

"Here, the underlying dispute between Prate and Liberty Mutual was an employment status dispute: namely, whether Prate's subcontractor ARW LLC, who had no workers' compensation coverage, had employees that would trigger additional premiums under Prate's policy. We specifically reject Liberty Mutual's characterization of the issue in this case as simply an analysis of the NCCI's Basic Manual Rule 2-H, *i.e.*, whether Prate furnished satisfactory evidence that the subcontractor had workers' compensation insurance in force. While it may be true that the final determination of how much additional premium is due would be calculated according to that rule, in order to reach that determination, there must be findings of fact and conclusions of law made to establish ARW LLC's status as an employer and if so, whether any of its employees completed work on Prate's projects. As we concluded in *CAT Express*, such determinations require the DOI and the Director to make factual findings regarding the parties' private interests in the scope of their insurance contract. No public interest or administration of any insurance law or regulation is implicated by the dispute at bar."[3] *Id.* ¶ 58.

_____

[3]Here, the appellate court appears to be conflating *CAT Express*'s section 462 analysis with its section 401 analysis. The language about the public interest or administration of any insurance law or regulation is part of *CAT Express*'s section 401 analysis. See *CAT Express*, 2019 IL App (1st) 181851, ¶ 22. Section 462 issues necessarily arise in the context of private disputes between insurers and insureds.

As in *CAT Express*, the court stated that the issues could be decided in a declaratory judgment action. *Id.* ¶ 59.

¶ 19    We allowed Liberty's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 20                                      ANALYSIS

¶ 21    Liberty argues that the appellate court erred in concluding that *CAT Express* is dispositive of this appeal. According to Liberty, *CAT Express* is clearly distinguishable, and the DOI had the authority to resolve this dispute under section 462.

¶ 22    An administrative agency has no general or common-law powers. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005). The agency is limited to those powers granted to it by the legislature in its enabling statute. *Id.* When the agency renders a decision that it is without statutory authority to make, it is without jurisdiction, and the decision is void. *Id.* at 554.

¶ 23    Determining whether the DOI had the authority to resolve this dispute requires us to construe section 462. The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning. *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 12. It is well settled that courts cannot depart from the plain language of a statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Munoz v. Bulley & Andrews, LLC*, 2022 IL 127067, ¶ 22. Moreover, there is no rule of statutory construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute imports. *Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 593 (2002). Our review is *de novo*. See *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 20 ("The scope of powers conferred on an administrative agency by its enabling legislation is a question of statutory interpretation which we review *de novo*.").

¶ 24    Liberty argues that the DOI had jurisdiction over this matter pursuant to section 462. Liberty contends that this case involved an application of manual rule 2-H to

Prate's policy and is thus precisely the type of question the DOI is entitled to resolve. *CAT Express*, by contrast, involved an employment status dispute. The sole question was whether certain owner-operators were employees or independent contractors under the common law. Liberty points out that the Idaho Supreme Court considered a case with similar facts under the analogous Idaho statutory provisions and reached the opposite conclusion than the appellate court reached here. See *In re Idaho Workers Compensation Board*, 467 P.3d 377 (Idaho 2020). Finally, Liberty contends that, once jurisdiction is established under section 462, the DOI is authorized under section 401 to hold a hearing and resolve necessary factual questions.

¶ 25 The DOI and Prate both contend that the DOI was without the authority to resolve this dispute, but they employ different reasoning. Although the DOI held a hearing and rendered a decision in this matter—and argued in *CAT Express* that its authority was so broad that it could even resolve employment status disputes—it now argues that its authority under section 462 is extremely narrow and only allows it to resolve disputes about the interpretation of NCCI rules. The DOI acknowledges that the relevant statutory language refers to "application" of a rating system but argues that "application" should be understood to mean "interpretation." The DOI makes three arguments in support of this proposition: (1) the plain meaning of "application" is "interpretation," (2) the statutory phrase "aggrieved by the application of its rating system" means that the dispute must be about the proper interpretation of the rules, and (3) the context in which section 462 appears demonstrates that it authorizes the DOI to resolve disputes only about the proper interpretation of NCCI rules.

¶ 26 Prate also contends that the DOI did not have the authority to resolve the dispute that Prate filed with it but does not repeat the DOI's argument that "application" means "interpretation." Rather, Prate relies on *CAT Express*'s holding that the DOI does not have the authority to resolve employment status disputes. Prate contends that this case is a mere employment status dispute and that therefore the DOI did not have the authority to resolve it. Echoing the language of *CAT Express*, Prate argues that Prate was not aggrieved by the application of the NCCI rating system; it was aggrieved by Liberty's determination that ARW had employees.

¶ 27 Section 462 provides:

"Information to be furnished insureds—Hearings and appeals of insureds. Every rating organization, and every company which does not adopt the rates of a rating organization, shall, within a reasonable time after receiving written request therefor, furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, in readily understandable language, all pertinent information as to such rate as specified in rules adopted by the Department.

Every rating organization, and every company which does not adopt the rates of a rating organization, shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or company fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or such company on such request may, within thirty days after written notice of such action, appeal to the Director, who, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or company, may affirm or reverse such action." 215 ILCS 5/462 (West 2018).

¶ 28    For several reasons, we reject the appellate court's conclusion that the DOI did not have the authority to resolve this dispute. The request for review brought by Prate would seem to fall squarely within section 462. Liberty applied manual rule 2-H and determined that Prate owed additional premiums because of its use of an uninsured subcontractor, ARW. Liberty calculated the additional premium pursuant to the tables accompanying rule 2-H. Prate disputed that it owed the additional premium and sought review first before the Board and then later with the DOI when the Board declined to rule. Prate would ultimately challenge the additional premium on several grounds: (1) Prate denied that it was even bound by manual rule 2-H; (2) it contended that ARW had no employees of its own and that all work on Prate projects was performed by RTS, which did have workers' compensation insurance; and (3) assuming that rule 2-H applied and that ARW did have employees, Liberty had calculated the premium incorrectly. Thus, Prate contended that it was aggrieved by the application of manual rule 2-H, and it sought review of "the manner in which

[manual rule 2-H had] been applied in connection with the insurance afforded [it]." The plain language of section 462 gives the DOI the express authority to resolve this type of dispute.

¶ 29    The appellate court viewed *CAT Express* as dispositive of this appeal. The court believed that this case, like *CAT Express*, was an employment status dispute and thus the DOI had no authority to resolve it. 2021 IL App (1st) 191842-U, ¶ 58, The court also noted that Prate's appeal would have required the DOI to resolve disputed factual questions and that *CAT Express* does not allow the DOI to make factual findings regarding the parties' private interests in the scope of their insurance contract. *Id.*

¶ 30    For purposes of this appeal, it is not necessary for us to determine whether *CAT Express* was correctly decided. Liberty has not challenged its conclusion that section 462 does not permit the review of pure employment status disputes. Assuming that it was correctly decided, we find it clearly distinguishable. In *CAT Express*, CAT asked the NCCI to determine whether its owner-operators were employees or independent contractors. *CAT Express*, 2019 IL App (1st) 181851, ¶¶ 4-5. The NCCI declined to rule, informing CAT that the types of grievances it resolves involve the interpretation or application of experience rating plans, classification systems, and manual rules. *Id.* ¶ 5. The appellate court determined that the DOI likewise did not have the authority to resolve the dispute because CAT had not disputed the application of an experience rating plan, a classification system, or any NCCI manual rules. *Id.* ¶ 31. The sole issue that CAT had raised was that the owner-operators were not its employees. The court noted that "CAT did not raise any issue with Liberty's application of the NCCI's rating system to CAT's payroll; CAT did not argue that Liberty applied the wrong classification code to CAT's six disclosed clerical workers, that the owner-operators were misclassified, or that the applicable premium was incorrect." *Id.* ¶ 32. Accordingly, the court determined that "section 462 of the Insurance Code is inapplicable to the fundamental question in this case and cannot form the basis of the Department's implied authority to resolve the dispute." *Id.*

¶ 31    In the present case, by contrast, the NCCI did believe that Prate had presented a proper dispute for it to review; however, it determined that Prate had not provided it with enough information. Moreover, Prate *did* dispute both the application of a

- 14 -

manual rule and the amount of the premium. Prate argued that it was not bound by manual rule 2-H and that, even if it was, Liberty had applied that rule incorrectly both in determining that it owed an additional premium and in calculating the additional premium. We disagree with the appellate court's conclusion that the existence of factual questions such as whether ARW had insurance and whether ARW had employees deprived the DOI of the authority to resolve the dispute. The appellate court believed that *CAT Express* stood for the proposition that the DOI may not make any "factual findings regarding the parties' private interests in the scope of their insurance contract." 2021 IL App (1st) 191842-U, ¶ 58. That reading of *CAT Express* is too broad. Section 462 specifically allows review of the manner in which a rating system has been applied in connection with a party's insurance. Such disputes will necessarily arise in the context of a private dispute between an insurer and an insured over how the insurer applied the rating system to an insured's policy. Moreover, as Liberty notes, hearings before the DOI are governed by the Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2018); see 215 ILCS 5/407.1 (West 2018)), which specifically requires that final decisions contain findings of fact and conclusions of law (5 ILCS 100/10-50(a) (West 2018)). Contrary to what Prate argues and what the appellate court held, we believe that *CAT Express* compels the opposite result in this case.

¶ 32   We note that the Supreme Court of Idaho reached the same conclusion in a case with similar facts. In *In re Idaho Workers Compensation Board*, 467 P.3d at 380, the NCCI assigned Travelers Insurance Company to provide an assigned risk policy to Ultimate Logistics, LLC (Ultimate). Following a premium audit, Travelers determined that Ultimate should have been classified as a trucking company pursuant to classification code 7219 of NCCI's scopes manual. *Id.* Travelers also determined that two mechanics working with Ultimate should have been included in its premium-rate calculation. *Id.* Travelers sent an invoice to Ultimate for $39,000 in additional premiums. *Id.* Ultimate requested that the NCCI review both determinations. *Id.* The NCCI determined that Ultimate was properly classified as a trucking company but said that it could not make a determination as to whether the mechanics were properly included because it had no jurisdiction over coverage-related issues. *Id.* Following a hearing, the Idaho Workers Compensation Board upheld the NCCI's determination. *Id.* at 380-81. Ultimate appealed both issues to the Idaho Department of Insurance. *Id.* at 381. At the hearing, the auditor for Travelers explained that he had included the two mechanics in the premium-rate

calculation because they were uninsured subcontractors under basic manual rule 2.H. *Id.* The department's hearing officer entered a preliminary order upholding the Idaho board's decision that Ultimate was properly classified as a trucking company. *Id.* The hearing officer determined, however, that the mechanics should not have been included in the premium calculation under manual rule 2.H. *Id.* The director affirmed the hearing officer's preliminary order. *Id.* Travelers appealed to the district court, arguing that the department did not have the statutory authority to determine whether the mechanics were employees or independent contractors. *Id.* It also argued that the department's decision on that issue was not supported by substantial competent evidence. *Id.* Neither Travelers nor Ultimate sought review of the classification of Ultimate as a trucking company. *Id.* The district court determined that the question of whether the mechanics were employees or independent contractors was moot and that the dispositive question was whether the department had the authority to determine the proper application of NCCI basic manual rule 2.H. *Id.* The court concluded that the department had the authority to resolve this question because reviewing the application of a rating system to an insured's policy is within the authority granted to the department. *Id.* at 381-82.

¶ 33 Travelers argued on appeal to the Idaho Supreme Court that the department exceeded the scope of its authority in determining that the mechanics were not employees but independent contractors. *Id.* at 383. The court determined, however, that the director did not rely on the hearing officer's employees versus independent contractors analysis. *Id.* Rather, the director clarified that the issue was whether Travelers, which treated the mechanics as uninsured subcontractors, correctly included them in the premium-rate calculation under basic manual rule 2.H. *Id.* The court agreed with the director and the district court that the relevant question was not whether the mechanics were employees or independent contractors or whether the department had the authority to resolve that question. *Id.* at 384. Rather, the question was whether the department had the statutory authority to review an insurer's application of a rule promulgated by a rating organization for the calculation of premium rates. *Id.*

¶ 34 The Idaho Supreme Court determined that the department had the authority to resolve the dispute. The court rejected Travelers' argument that the relevant statute only granted the department the authority to determine whether a rate filing met the requirements of law. *Id.* at 385. The court pointed out that the relevant statute, Idaho

Code section 41-1622(2) (Idaho Code § 41-1622(2) (2019)) provided, in relevant part:

> " 'Every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby any person *aggrieved by the application of its rating system* may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. Any party affected by the action of such rating organization or such insurer on such request may, within thirty (30) days after written notice of such action, appeal to the director, who, after a hearing held upon notice to the appellant and to such rating organization or insurer in accordance with chapter 2, title 41, Idaho Code, may affirm or reverse such action.' " (Emphasis in original.) *In re Idaho Workers Compensation Board*, 467 P.3d at 385 (quoting Idaho Code § 41-1622(2) (2019)).

¶ 35    The court held that this section "plainly provides for the type of review that occurred in this case." *Id.* The court explained that an insurer is "applying" a rating system when it uses the system to determine how much an insured must pay under the terms of a policy. *Id.* The court explained that holding otherwise would require it to read the phrase "the application of" out of the statute. *Id.* The court reasoned as follows:

> "NCCI's Basic Manual Rule 2.H is part of a rating system promulgated by NCCI and used by insurance companies in Idaho to write and administer workers' compensation policies. As such, Basic Manual Rule 2.H is a 'rate filing' as described in section 41-1606 and subject to review under sections 41-1622 and 41-1623 of the Insurance Code. Travelers 'applied' NCCI's Basic Manual Rule 2.H to determine whether two mechanics, treated as uninsured subcontractors, could be included in the premium-rate calculation. That calculation had a direct impact on Ultimate's workers' compensation policy because it was used to determine the premium rates Ultimate would be charged. Since aggrieved insureds have a right to review 'the application of' a rating system in connection with their insurance policy, Ultimate rightfully sought review of Travelers' 'application of' Rule 2.H to its insurance policy. Therefore, the district court did not err in determining that the Department acted

within its statutory authority under sections 41-1622 and 41-1623 of the Insurance Code when it reviewed 'the application of' NCCI's Basic Manual Rule 2.H to Ultimate's insurance policy." *Id.*

Notably, this was true even though determining whether rule 2.H was properly applied depended on the resolution of two of the same factual questions that were before the DOI in our case: (1) whether the mechanics had their own workers' compensation policies and (2) whether the mechanics had any employees. *Id.* at 386. The court ultimately determined that the department's finding that the mechanics had their own policies was not supported by competent evidence but that the finding that the mechanics did not have employees was supported by substantial competent evidence. *Id.* at 387. Thus, the court upheld the department's ultimate conclusion that Ultimate was not required to pay additional premiums under rule 2.H. *Id.*

¶ 36   We agree with the Idaho Supreme Court's analysis, and we note that the case for the DOI's authority to resolve the dispute was even stronger in the case before us because, in addition to the factual questions of whether ARW had insurance and whether ARW had employees, Prate had also argued that (1) it was not bound by rule 2-H and (2) the additional premium was calculated incorrectly under rule 2-H. Clearly, Prate sought review of the manner in which Liberty had applied Rule-2-H in connection with the insurance Liberty provided it.[4]

¶ 37   We now briefly address the DOI's arguments against this conclusion. First, we disagree with the DOI's contention that we should construe the word "application"

---

[4]The Iowa Supreme Court has held that even employment status disputes must be submitted to the NCCI. In *Travelers Indemnity Co. v. D.J. Franzen, Inc.*, 792 N.W.2d 242 (Iowa 2010), a dispute arose between Travelers and Franzen over whether certain truck drivers should be classified as employees or independent contractors. The issue was whether Franzen was required to exhaust his administrative remedies before a court could resolve this issue. The court held that exhaustion of remedies was required. The court construed the analogous Iowa statute allowing an aggrieved party to seek review of the manner in which a rating system was applied to the insurance afforded it (Iowa Code § 515A.9 (2009)). The court explained that parties paying premiums are aggrieved by the application of the rating system. *Travelers*, 792 N.W.2d at 247. The court viewed the NCCI as having expertise in determining employee status and how workers' compensation premiums should be calculated. *Id.* at 249. Thus, the court held that Franzen was required to contest the rate and the employment status of the drivers pursuant to Iowa Code section 515A.9 before the issue could be litigated in court. *Id.* at 250.

in the statute to mean "interpretation." The DOI cites nothing persuasive in support of this contention. For instance, the DOI cites the Black's Law Dictionary definition of "question of law" as "[a]n issue *** concerning the application or interpretation of the law" (Black's Law Dictionary 1366 (9th ed. 2009)) and *CAT Express*'s reference to "interpretation or application" of the NCCI rules (*CAT Express*, 2019 IL App (1st) 181851, ¶ 31). These disjunctive phrases, however, can just as easily be read as demonstrating that the two words have distinct meanings. The DOI does not cite a definition of "application" that means "interpretation," and indeed that is simply not what the word means. Rather, "application" means "an act of putting something to use" (see Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/application (last visited May 2, 2022) [https://perma.cc/X538-8XHX]), and "applied" means "put to practical use" (see Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/applied (last visited May 2, 2022) [https://perma.cc/R5XH-YRE2]). We assume that, had the legislature meant "interpretation," it would have said "interpretation." Instead, it chose a word that has a plain meaning other than "interpretation." We are not free to ignore the language the legislature chose. The DOI also contends that, in the administrative context, the word "application" is commonly used as part of the phrase "application of law to fact," which refers to mixed questions of law to fact. Thus, the DOI contends that the type of "interpretation" contemplated by section 462 means resolving how particular facts relate to the NCCI rules. Here, however, the word "application" is not used as part of the phrase "application of law to fact," and the statute specifically spells out the type of review that is contemplated: a party may seek review of "the manner in which such rating system has been applied in connection with the insurance afforded him." We see nothing in this language that would preclude the DOI from resolving factual questions necessary to determining if the rating system has been applied correctly. The DOI's argument would read a limitation not expressed by the legislature into the statute.

¶ 38    The DOI next contends that the phrase "aggrieved by application" of the rules means that the "application" must be the source of the grievance. The DOI claims that a party cannot be aggrieved by application of rules that were correctly interpreted and that, if there is no dispute about the meaning of the rules, then the insured must have been aggrieved by some other element of calculating the premium, such as a finding of fact. The DOI contends that, had the legislature been concerned in section 462 with all matters that could possibly affect the amount of

the premium, it would have been easier to say that the DOI was authorized to hear all premium disputes. As thoroughly set forth above, however, we believe that the plain language of section 462 allows a party to contest the manner in which the rules were applied in connection with the insurance afforded it, and this may sometimes require the resolution of factual matters. Moreover, no one is arguing that section 462 applies to all matters that could possibly affect the amount of the premium. Only disputes about the application of a rating system are covered by section 462.

¶ 39    Finally, the DOI contends that the context in which section 462 appears demonstrates that the DOI may only resolve disputes about the proper interpretation of the rules. The DOI notes that disputes under section 462 begin with the Board and then are appealed to the DOI. The DOI argues that it would be strange for the legislature to give the Board the authority to resolve factual questions, but it would make sense to give the Board the authority to make initial determinations about NCCI rules. The DOI claims that it would be inefficient and nonsensical to require all premium disputes to begin with the Board and that nothing in section 462 suggests that the legislature intended the Board or the DOI to displace the circuit court as the primary factfinder and interpreter of statutes in insurance premium disputes. Again, though, section 462 does not apply to all insurance premium disputes. It applies only to those involving the application of a rating system to a party's insurance. Moreover, we agree with Liberty that the DOI's view that the existence of a single factual dispute precludes review under section 462 would render that section largely meaningless, particularly where that section specifically contemplates that both the Board and the DOI will hold hearings on the dispute.

¶ 40                                    CONCLUSION

¶ 41    For all of the above reasons, we believe that the DOI had the statutory authority under section 462 to resolve this dispute. We thus reverse the appellate court's decision. The parties have also argued the merits of their dispute in this court. The appellate court, however, never reached the merits because it erroneously concluded that the DOI had acted beyond its statutory authority. The only issue that Liberty raised in its petition for leave to appeal was that the appellate court erred in determining that the DOI acted beyond its statutory authority. Having resolved that

issue against the appellate court's position, we now remand the case to the appellate court to address the parties' remaining arguments.

¶ 42       Appellate court judgment reversed and remanded.